STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss                           CIVIL ACTION
DOCKET NO. CV-09-22

RICHARD J. THOMAS, et al,,

Plaintiffs,

v.



CCT 1 5 2009

PENOBSCOT COUNTY

ORDER ON
DEFANDANTS' 12(B)(6)
MOTION TO DIMISS

EATON PEABODY, et al.,

Defendants.

Before the Court is the Defendants' Motion to Dismiss Counts I, III, IV and IV, of the Plaintiff's complaint pursuant to M.R. Civ. P. 12(b)(6). The court has reviewed the parties' filings in the matter, and considered their oral presentations. The Defendants Motion to Dismiss is granted, in part, and denied, in part.

## I. PROCEDURAL BACKGROUND

On March 16, 2009, Plaintiffs Robert J. Thomas, individually and as Trustee for the Ichabod Trust, and Richard A. Thomas, individually, filed suit against the defendants Eaton Peabody, PA ("Firm"), and three attorneys employed by the Firm, Christine Burke-Worthen, Calvin E. True, and Nathaniel S. Putnam, respectively. On March 16, 2009, the defendants served the plaintiffs with a timely responsive pleading and the M.R. Civ. P 12(b)(6) motion to dismiss Counts I, III, IV, and V of the Complaint. The Firm then served the plaintiffs with an amended pleading setting forth three counterclaims: (1) breach of contract; (2) unjust enrichment; and (3) services rendered. The Firm's counterclaims stem from the plaintiffs' failure to pay for the legal services it rendered in connection with the representing Robert Thomas, Richard Thomas, and the Trust.

1

Subsequently, the plaintiffs moved to stay all proceedings pending the outcome of an appeal Richard Thomas filed with United States Court of Appeals for the First Circuit on June 1, 2009. As part of the motion to stay the proceedings, the plaintiffs summarily denied "the Defendants' arguments in their defense of Counts I, III, IV, and V." (Plaintiff's Mot. to Stay Proceedings ¶ 4.) This Court denied the plaintiffs motion to stay proceedings on June 25, 2009. Consequently, the Firm's 12(b)(6) motion to dismiss Counts I, III, VI and V of the Complaint is ripe for review.

## II. FACTUAL BACKGROUND

The facts relevant to this motion to dismiss are set forth in the Complaint. At some point in 1997, the plaintiffs formed the Ichabod Trust with plaintiff Richard J. Thomas and Joan M. Thomas designated as beneficiaries. (Compl. ¶ 8.) On February 5, 2005, the Internal Revenue Service ("IRS") made tax assessments against Richard Thomas for allegedly failing to pay federal income taxes during the years 1995 and 1996. (*Id.* at ¶ 9.) On June 19, 2006, Plaintiff Robert A. Thomas, Trustee of the Ichabod Trust ("Trust"), engaged attorney Calvin True of Eaton Peabody, PA, to provide legal advice concerning the validity of the Trust. (*Id.* at ¶ 11.) At the time of that meeting, Plaintiff Richard Thomas was involved in a separate criminal proceeding in federal district court on charges of tax evasion. (*Id.* at ¶ 13.) On March 12, 2007, the IRS placed a jeopardy levy in the amount of $52,000.00 on the Penobscot County Federal Credit Union account holding the Trust assets. (*Id.* at ¶ 19.) Shortly thereafter, Robert Thomas hired Calvin True to defend the Trust against the jeopardy levy imposed by the IRS. (*Id.* at ¶ 20.) On April 5, 2007, Richard Thomas signed a form giving True and Burke-Worthen Power of

2

Attorney to represent him.[1] (*Id.* at ¶ 21.) Burke-Worthen then requested an administrative hearing to review the actions of the IRS regarding the jeopardy levy imposed on the Trust account. (*Id.* at ¶ 22.)

On May 7, 2007, the IRS delivered to Burke-Worthen notice of a second jeopardy levy on the Trust account identical to the one previously received by the plaintiffs on March 12, 2007. (*Id.* at ¶ 26.) Burke-Worthen then filed a request with the IRS for a Collections Due Process ("CDP") hearing on May 21, 2007. (*Id.* at 27.) The IRS held a CDP hearing on July 10, 2007. (*Id.* at 28.) The Firm did not initiate proceedings seeking judicial review of the jeopardy levy in United State District Court pursuant to 26 U.S.C. § 7429. (*Id.* at ¶ 29.) On August 7, 2007, the IRS issued a Notice of Determination upholding the jeopardy levy imposed on the Trust. (*Id.* at ¶ 30.) Burke-Worthen then advised Richard Thomas that she would appeal the decision of the Tax Court to uphold the jeopardy levy on the Trust provided the plaintiffs could pay the fees necessary to continue representation. (*Id.* at ¶ 31.) As the plaintiffs were unable to procure additional funds to retain the Firm for the purposes of appealing the jeopardy levy on the Trust, the Firm did not file an appeal for "wrongful levy" on behalf of the Trust or its Trustee within the nine months required by 26 U.S.C. § 6532(c). (*Id.* at ¶ 33.)

*III. STANDARD OF REVIEW*

On a motion to dismiss, facts are not adjudicated. Instead, the court evaluates the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint. The court considers the facts stated in the complaint as if they were admitted. *Libner v. Me. County Comm'rs Ass'n*, 2004 ME 39, ¶ 7, 845 A.2d

---

[1] The Complaint is unclear concerning the exact capacity in which the Firm was to represent Richard Thomas. As is established later Complaint, Burke-Worthen appears to have represented the interests of Richard Thomas during the administrative hearings with the IRS.

3

570, 572; *Napieralski v. Unity Church of Greater Portland*, 2002 ME 108, ¶ 4, 802 A.2d 391, 392. Evaluating the complaint in the light most favorable to the plaintiff, the court determines whether the complaint "sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *In re Wage Payment Litig.*, 2000 ME 162, ¶ 3, 759 A.2d 217, 220. "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1246.

## IV. DISCUSSION

### A. Count I: Negligence

The Firm essentially concedes that it owed Robert Thomas, both individually and as Trustee of the Trust, a duty of care to provide competent legal advice concerning the validity of the Trust. (Def.'s Mot. to Dismiss 3.) Even assuming a breach of the standard of care, however, the Firm moves to dismiss Count I on the grounds that any such breach could not have proximately caused the injuries the Robert Thomas alleges in the Complaint. To prove a claim for professional negligence, or civil malpractice, "the plaintiff must show (1) a breach by the defendant attorney of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of the duty proximately caused an injury or loss to the plaintiff." *Corey v. Norman, Hanson & Detroy*, 1999 ME 196, ¶ 10, 742 A.2d 933, 938-39.

Robert Thomas alleges that an attorney-client relationship existed at the time True rendered legal advice concerning the validity of the Trust, the advice True gave to Robert Thomas was "negligent," and as a result of True's "negligent" advice, Robert

4

Thomas suffered damage to his reputation and suffered loss of customers and business. (Compl. ¶¶ 37-40.) Crediting the facts alleged in the Complaint as true, the Firm argues that the plaintiffs have failed to plead facts sufficient to demonstrate a causal connection between the negligent act, rendering "negligent" advice concerning the validity of the Trust, and the injury alleged, harm to Robert Thomas' reputation and loss of customers and business. This Court agrees.

The Law Court has noted "[p]roximate cause exists in professional malpractice cases where evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence." *Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 2000 ME 214, ¶ 8, 763 A.2d 121, 124) (quoting *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778, 780-81) (quotation marks omitted). Generally, the issue of proximate cause is a question of fact for the jury. *Klingerman v. SOL Corp of Me.* 505 A.2d 474. However, the Court may wrest the proximate cause inquiry from jury determination "when the matter remains one of pure speculation or conjecture . . .[and] a defendant is entitled to judgment." *Merriam*, 2000 ME 159, ¶ 8, 757 A.2d at 781.

In this case, Robert Thomas alleges that True's negligent advice concerning the validity of the Trust is somehow connected to a loss of reputation and business clientele. There are no facts in the Complaint suggesting the Trust was integrally related to Robert Thomas' consulting business. Furthermore, the Complaint fails to either set forth elements of a defamation claim, or allege facts that would entitle him to relief pursuant to a defamation theory. *See, e.g., Withers v. Hackett*, 714 A.2d 798, 801 (Me. 1998) (noting

5

that a common law defamation claim requires the plaintiff to prove a false and defamatory statement concerning another, unprivileged publication to a third party, fault amounting to at least negligence on the part of the publisher, and either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication) (citation omitted).

The proximate cause analysis applicable to attorney malpractice actions demonstrates that the loss of reputation and business injury claimed by Robert Thomas is wholly unrelated to any advice True rendered concerning the validity of the Ichabod Trust. Simply put, the Court fails to find any correlation between the advice given, even if "negligent" as the plaintiff claims, and Robert Thomas' ability to maintain clients in his professional capacity as an investment, tax, and accounting advisor. The injury the Robert Thomas claims is not a foreseeable consequence of the allegedly negligent advice rendered by True concerning the validity of the Trust, but rather, subject to "pure speculation or conjecture." *Merriam*, 2000 ME 159, ¶ 8, 757 A.2d at 781.

The plaintiff has thus failed to plead facts sufficient to demonstrate the causal connection between the advice concerning the trust and the defamation-like injury Robert Thomas claims to have suffered. Moreover, the Court cannot conceive of any facts that Robert Thomas could plead or otherwise show at trial that would demonstrate the injury claimed in the absence of alleging a separate defamation count. In other words, "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." 1 Field McKusick & Wroth, *Maine Civil Practice* § 12.11 at 249 (2d ed. 1970) (quoting *Conley v,. Gibson*, 355 US 41, 45-6, 79 S. Ct.99, 102 (1957)). Since the Complaint does not provide facts that would support a defamation

6

claim, or otherwise states the elements of a defamation claim, Robert Thomas has failed to state a claim upon which relief can be granted with respect to Count I of the Complaint. M.R. Civ. P. 12(b)(6).

B. Count III: Negligence

In its motion to dismiss Count III, the Firm argues that the Complaint itself avers facts that specifically undermine the basis for this claim. The Firm attacks the breach element of the plaintiffs claim by noting that the plaintiffs (1) received notice of the jeopardy levy imposed on the Trust; and (2) the plaintiffs were aware of, and the Firm specifically relied on, the statutorily designated process of pursuing expedited judicial review of the jeopardy levy imposed on the Trust.

A thorough review of the Complaint outline at least two possible professional negligence claims. First, Robert Thomas alleges that the Firm's primary responsibility was to protect the Trust and represent him as Trustee throughout the course of the jeopardy levy proceedings. (Compl. ¶¶ 54-5.) The Complaint charges that Burke-Worthen erroneously noted plaintiff "Richard Thomas" as the "Trustee"[2] of the Ichabod Trust on the form document requesting the CDP hearing. (*Id.* at ¶ 56.) The Complaint further states that Burke-Worthen continued to refer to Richard Thomas as the Trustee of the Ichabod throughout the CDP hearing process. (*Id.*) In addition, the Complaint states that Burke-Worthen failed to raise four issues at the CDP hearing critical to defending the Trust property against the IRS jeopardy levy. (*Id.* at ¶ 62.) Specifically, the plaintiffs allege that Burke-Worthen failed to notify the CDP hearing board of the following material facts:

---

[2] The background facts indicate that plaintiff Robert Thomas was, in fact, the designated Trustee of the Ichabod Trust. (Compl. ¶¶ 11-12.)

(1) Richard Thomas did not receive a Notice and Demand for Payment from the IRS;

(2) Richard Thomas did not receive pre-assessment Audit Trail documents supporting the IRS's February 2002 assessment of his income tax liabilities for the years 1995 and 1996;

(3) The IRS did not comply with Richard Thomas' discovery requests to disclose any pre-assessment documents connecting Richard Thomas to the February 2002 tax assessment; and

(4) The criminal freeze placed on the Trust account, as a result of the jeopardy levy imposed by the IRS, denied Richard Thomas access to Trust funds that would have permitted him to hire an attorney of his choice for the purposes of defending against the tax evasion charges.

(*Id.* at ¶ 63.) Thus, the plaintiffs' basic claim appears to be that the Firm was negligent in defending the IRS jeopardy levy imposed on the Trust. Richard Thomas alleges two injuries based on the loss of Trust assets through the jeopardy levy proceedings: (1) the negligent defense left Richard unable to pay for a private defense attorney to represent him on tax evasion charges; and (2) severe emotional distress. (*Id.* at ¶ 65.)

Alternatively, Count III of the Complaint sets forth an additional theory of pursuing a professional negligence action against the Firm. The plaintiffs allege that the Firm had an obligation to inform them that they could pursue an expedited challenge to the IRS's jeopardy levy under 26 U.S.C. § 7429. (Compl. ¶¶ 59-60.) The Complaint states that the Firm failed to properly inform the plaintiffs of the additional means of expediting review of the jeopardy levy by initiating suit against the United States in Federal District Court. (*Id.* at ¶ 59.) The plaintiffs claim that the Firm thus failed to properly challenge the jeopardy levy by pursuing an administrative review process "not

8

authorized by the IRS Code" and by failing to file an action in United States District Court. [3] (*Id.* at ¶¶ 60-61.) Consequently, the plaintiffs' claim that Firm's failure to initiate proceedings in Federal District Court rendered the trust assets unavailable, deprived Richard Thomas of the ability to hire private legal counsel to defend against tax evasion charges, inflicted severe mental distress, caused significant monetary loss, and otherwise impeded Richard Thomas' ability to challenge the constitutionality of the jeopardy levy during his tax evasion trial. (*Id.* ¶¶ 57-58.)

The Firm's attack on the sufficiency of the professional malpractice claim alleged in Count III appears focused on the latter of the two claims noted above. The Firm argues that (1) the plaintiffs were well aware of the procedural means available to pursue expedited judicial review of the jeopardy levy; and (2) the Firm pursued the review of the jeopardy levy within the parameters of 26 U.S.C. § 7429 by lodging the plaintiffs' protest through the administrative process. Regardless of the Firm's position on whether the allegations of professional negligence in Count III rest on false grounds, the plaintiffs allege that attorney Burke-Worthen negligently failed to raise issues critical to defending the Trust assets against the jeopardy levy during the CDP hearing. (Compl. ¶ 63.); *see, e.g., Neihoff v. Shankman & Assoc Legal Ctr., P.A.*, 2000 ME 214, ¶ 9, 762 A.2d 121, 124 (recognizing "legal malpractice in advice or tactics which preceded the final result on the merits of an underlying action" as a species of attorney negligence). In addition, the Firm has provided the court with no legal basis to explain why it did not initiate judicial

---

[3] The relevant portion of the Internal Revenue Code, 26 USC § 7429, permits both administrative and judicial review of a jeopardy levy imposed by the IRS. As the noted by the Firm, a taxpayer must first initiate the administrative review process before filing an civil action in United States District Court. The Internal Revenue Code requires a taxpayer served with notice of a jeopardy levy to request an administrative hearing within 30 days of receiving the notice. 26 U.S.C. § 7429(a)(2). After first requesting administrative review, the taxpayer may bring a civil suit against the United States in District Court within 90 days after the earlier of (1) the day the IRS notifies the taxpayer of its decision concerning the taxpayers protest; or (2) the 16th day after the taxpayer protests the jeopardy levy. 26 U.S.C. § 7429(b)(1)(A)-(B).

9

review of the jeopardy levy in Federal District Court after properly lodging an administrative appeal. *See* 26 U.S.C. § 2479. Thus, under either theory discernible under Count III, the Complaint states sufficient facts to withstand a M.R. Civ. P. 12(b)(6) motion to dismiss.[4]

C. Count IV: Conspiracy

The Firm argues, as matter of law, that the plaintiffs cannot maintain a cause of action for civil conspiracy on the facts of this case. Traditionally, the Law Court has not viewed civil conspiracy as an independent tort. *Potter, Prescot, Jamieson & Nelson, P.A. v. Cambell*, 1998 ME 70, ¶ 8, 708 A.2d 283, 286. A claim of civil conspiracy will fail "as the basis for the imposition of civil liability absent the *actual commission of some independently recognized tort*; and when such separate tort has been committed, it is *that tort*, and not the fact of combination, which is the foundation of the civil liability." *Cohen v. Bowdoin*, 288 A.2d 106, 112 (Me. 1972) (citation omitted) (emphasis in original).

The plaintiffs allege that the Firm conspired "to assist the Federal Court in expediting the federal prosecution and [to] assist the IRS in the prosecution of . . . Richard Thomas." (Compl. ¶ 71.) The plaintiffs draw this conclusion, in part, based on the fact that the Firm employs Timothy Woodcock, the brother of Federal District Court Judge John A. Woodcock. (*Id.* at ¶ 69.) As noted by the Firm, this claim explicitly refers back to the allegations in Count III: "Defendants True, Burke-Worthen and Eaton-Peabody, PA did knowingly, blatantly, and with reckless disregard for the rights of Plaintiff Richard Thomas, fail to follow the procedures required by 26 U.S.C. § 7429 to

---

[4] This ruling does not diminish the plaintiffs' burden at trial to prove that, but for the Firm's conduct, the plaintiffs more likely than not would have been successful in protesting the jeopardy levy. *See Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989) (noting that the issue for a jury in an attorney malpractice action is whether the attorney's conduct "was a substantial factor in bringing about the loss of the initial action"); Simmons, Zillman & Gregory, *Main Tort Law* § 9.28 at 9-77 n.4 (2004 ed.).

10

expedite judicial review in Federal District Court of the March 12, 2007 jeopardy levy." (*Id.* at ¶ 72.) The plaintiffs ultimately conclude that the intentional failure to follow the mandate of 26 U.S.C. § 7429 "set it up for Judge Woodcock, Jr. in his September 24, 2008 order to deny Plaintiff Richard Thomas' constitutional challenge to the jeopardy levy because it interfered with his right to counsel of his choice in his criminal trial." (*Id.* ¶ 73.) As noted by the Firm, the basis of the civil conspiracy claim necessarily involves the alleged failure of Firm to pursue judicial review of the jeopardy levy under 26 U.S.C. § 7429. Consequently, because the plaintiffs' negligence claim in Count III survives, it is that claim that will serve as the basis for possible liability. *Cohen*, 288 A.2d at 112. Therefore, Count IV, the plaintiffs' civil conspiracy claim, is dismissed for failure to state a claim upon which relief can be granted. M.R. Civ. P. 12(b)(6).

D. Count V: Business Interference

The Firm argues that the Complaint is insufficient to sustain a claim of tortious interference for two reasons. First, the Firm argues that the Complaint does not sufficiently establish the element of "fraud or intimidation" necessary to make out a *prima facie* claim for tortious interference with a prospective economic advantage. A claim for tortious interference with a prospective economic advantage requires the plaintiff to show: "(1) a valid contract or prospective economic advantage existed; (2) the defendant interfered with that contract or advantage through fraud or intimidation; and (3) such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104, 1110 (citing *James v. MacDonald*, 1998 ME 148, ¶ 7, 712 A.2d 1054, 1057).

11

According to the Complaint, plaintiff Robert Thomas runs an accounting, tax preparation, and investment counseling business in Bangor, Maine. (Compl. ¶ 76.) Robert Thomas avers that Putnam advised "one of [Robert] Thomas' major clients" to seek a second opinion with regard to any investment services currently being rendered and "to seek said services elsewhere." (*Id.* at ¶ 77.) As a result of Putnam's conversation with this unnamed person, ostensibly a client of both the Firm and Robert Thomas, Robert Thomas claims to "have lost a major tax and investment client and the future income [his] services [for this client] would generate." (*Id.* at ¶ 79.)

The Firm argues the complaint is "bereft of any suggestion" that Putnam fraudulently interfered with Robert Thomas' business clientele. To support its argument, the Firm establishes that the gravamen of a tortious interference with a prospective economic advantage claim is the "presence of fraud or intimidation . . . [which] distinguishes unlawful conduct from conduct inherent in a healthy competitive environment." *Rutland*, 2002 ME 98, ¶ 13, 798 A.2d at 1104. To demonstrate the element of fraud necessary to sustain the tortious interference claim, Thomas must show that Putnam:

> (1) ma[de] a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relie[d] on the representation as true and act[ed] upon it to the damage of the plaintiff.

*Rutland*, 2002 ME 98, ¶ 13 n.5, 798 A.2d at 1110 n.5 (quoting *Petit v. Key Bank of Me.*, 688 A.2d 427, 430 (Me. 1996)). Again, the Complaint states only that Putnam counseled one of Robert Thomas' investment clients to "seek a second opinion regarding using Robert Thomas for investment services and to seek said services elsewhere." (Compl. ¶

12

77.) The Complaint makes no specific allegation of fraud. Instead, the plaintiff merely avers that Putnam "with negligence and reckless disregard to Thomas' rights . . . knew or should have known, that the client had been brought to Eaton Peabody, PA originally *by* Plaintiff Thomas, and Defendant Putnam acted to interfere with Robert Thomas's account and investment business." (Compl. ¶ 77.) Whether Putnam's advice was negligent or reckless is irrelevant to the M.R. Civ. P.12(b)(6) inquiry. *See Rutland*, 2002 ME 98, ¶ 13 n.5, 798 A.2d at 1110 n.5 (noting that the Law Court has never recognized a claim for negligent interference with an economic advantage and the Restatement (Second) of Torts § 766(C) similarly rejects the negligent interference theory as a basis of tort liability). Where fraud is alleged, the circumstances constituting the allegation "shall be stated with particularity." M.R. Civ. P. 9(b). The Complaint takes no affirmative step to state with particularity or otherwise provide bare facts that demonstrate fraud. The allegation of negligence or recklessness is thus insufficient to sustain the tortious interference with a prospective economic advantage claim against the Firm's motion to dismiss for failure to state a claim upon which relief can be granted.[5] M.R. Civ. P. 12(b)(6).

Second, the Firm argues that the Count V lacks the necessary proximate cause connection to maintain the tortious interference claim. The Court need not address the merits of this argument given that the Plaintiffs have failed to allege or state sufficient facts in the Complaint to demonstrate fraud or intimidation.

---

[5] The claim for tortious interference with a prospective economic advantage may also proved by intimidation. The Law Court has defined interference by intimidation as unlawful coercion or extortion. *Rutland*, 2002 ME 98, ¶ 16, 798 A.2d at 1111 (citing Black's Law Dictionary 827 (7th ed. 1999)). The Complaint is devoid of any facts or conclusions suggesting Putnam coerced, or otherwise extorted, the unnamed client for the purpose of interfering with the consulting services Robert Thomas allegedly performed for this client. Similar to the fraud analysis above, the Complaint has failed to plead sufficient facts to withstand the Firm's M.R. Civ. P. 12(b)(6) motion to dismiss even if the plaintiffs were to rely on an "intimidation" theory in order to prove the tortious interference claim.

The entry is:

1. Defendant Eaton Peabody's motion to dismiss Count I of the Plaintiff's complaint is **GRANTED**.

2. Defendant Eaton Peabody's motion to dismiss Count III of the Plaintiff's complaint is **DENIED**.

3. Defendant Eaton Peabody's motion to dismiss Count IV of the Plaintiff's complaint is **GRANTED**.

4. Defendant Eaton Peabody's motion to dismiss Count V of the Plaintiff's complaint is **GRANTED**.

Date: October 14, 2009

M. Michaela Murphy
Justice, Superior Court

14

10/27/2009                    MAINE JUDICIAL INFORMATION SYSTEM
                          PENOBSCOT COUNTY SUPERIOR COURT
                             PAGE P - PARTY VIEW
RICHARD J THOMAS ET AL   S EATON PEABODY PA ET AL

                                        CASE #:BANSC-CV-2009-00022

---

| SEQ | TITLE | NAME | DOB | ATTY |
|-----|-------|------|-----|------|
| 001 | PL | RICHARD J THOMAS PRO SE | / / | PRO |
| 003 | PL | ROBERT A THOMAS TRUSTEE ICHABOD TRUST PRO SE | / / | PRO |
| 004 | PL | ROBERT A THOMAS INDIVIDUALLY PRO SE | / / | PRO |
| 002 | DEF | EATON PEABODY PA   by Bernard Kubetz, Esq.& Mark Beaumont, Esq. | | |
| 005 | DEF | CHRISTINE BURKE WORTHEN  by "    " | " / / " | T |
| 006 | DEF | CALVIN E TRUE        by "   " | " / / " | T |
| 007 | DEF | NATHAN S PUTNAM      by "   " | " / / " | T |

STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-09-22
2 AMM - PEN - 2/7/2011

RICHARD J. THOMAS, et
al.,

Plaintiffs,

v.

EATON PEABODY, PA, et. al.,

Defendants.

**DECISION AND ORDER
ON DEFENDANTS'
MOTION FOR
SUMMARY JUDGMENT**

On January 28, 2009 Plaintiffs filed a five count complaint alleging three counts

of professional negligence, one count of conspiracy and one count of business

interference. On March 16, 2009 Defendants filed a Rule 12(b)(6) motion to dismiss

Counts I, III, IV and V. Counts I, IV and V were dismissed on October 15, 2009,

pursuant to M. R. Civ. P. 12(b)(6) (Murphy, J.). Currently before the Court is the

Defendants' Motion for Summary Judgment on Counts II and III, filed pursuant to M.R.

Civ. P. 56. While Plaintiffs filed a Response to the Motion for Summary Judgment, they

did not file an Opposing Statement of Material Facts as required by Rule 56(h)(2).

Having reviewed the parties' filings, the Court grants the Defendants' motion for

summary judgment on Counts II and III.

*FACTUAL BACKGROUND*

In 1997, the Internal Revenue Service (IRS) began pursuing Plaintiff

Richard Thomas for unpaid income taxes. The IRS prepared substitute tax returns on

1

behalf of Richard Thomas for tax years 1995 and 1996 and mailed a Notice of Deficiency to Richard Thomas on September 14, 2000. The IRS notice informed Richard Thomas that he had 90 days from the date of the Notice of Deficiency to contest the assessment. Richard Thomas did not voluntarily the pay the assessment, nor contest it within 90 days, and thus the amounts were assessed for the outstanding taxes owed for the tax years 1995 and 1996.

In October of 2000, several weeks after the Notice of Deficiency was sent to Richard Thomas, Plaintiff Richard Thomas caused the creation of the Ichabod Trust ("Trust"), an irrevocable trust established under the laws of the State of Nevada, naming himself and his wife, Joan M. Thomas, as beneficiaries.

On January 11, 2006, Richard Thomas was indicted on six counts of tax evasion for his alleged failure to file federal income tax returns from 1995 through 2001, excluding the year 1997. In May 2006, the Trust sold certain property to provide for the living and legal expenses of beneficiaries Richard and Joan Thomas.

On June 6, 2006, Plaintiff Robert Thomas, the brother of Plaintiff Richard Thomas, became the acting trustee of the Trust. Around that time Robert Thomas met with Attorney Calvin True, an employee of Defendant Eaton Peabody, to inquire about the legal validity of the Trust. Attorney True advised Robert Thomas that the Trust, at least on its face, appeared to be validly formed.

On March 12, 2007, many years after the initial assessment, the IRS placed a jeopardy levy in the amount of approximately $52,000.00 on the Penobscot County Federal Credit Union account holding the trust assets and delivered a "Notice of Jeopardy Levy and Right of Appeal" (March 2007 Notice) to Richard Thomas and to the Trust, as

2

nominee of Richard Thomas. The IRS did not recognize the trust as a separate legal entity and levied against the assets of the Trust as if they were the assets of Plaintiff Richard Thomas individually. The March 2007 Notice indicated that Richard Thomas appeared to be utilizing the Trust "to place property beyond the reach of the Government" and otherwise that his "financial solvency appeared to be imperiled," jeopardizing the Government's ability to collect on taxes owed for the years 1995 and 1996. As part of the March 2007 Notice, IRS Territory Manager Peter Bousnakis approved the issuance of a jeopardy levy on Trust property under 26 U.S.C. § 6331. The March 2007 Notice contained instructions on the availability of and procedure for pursuing administrative and judicial review of the jeopardy levy under 26 U.S.C. § 7429. Following the issue and delivery of the March 2007 Notice, Defendants were retained to defend the Trust assets against the IRS jeopardy levy.

The IRS delivered a second "Notice of Jeopardy Levy and Right to Appeal" on May 7, 2007. The substantive content of this second notice was much the same as the first, with the IRS indicating that Richard Thomas appeared to be using the Trust "to place . . . property beyond the reach of the Government" and that his "financial solvency appear[ed] to be imperiled." Importantly, however, the May 2007 Notice differed from the March 2007 Notice in that it notified the Plaintiff of his appeal rights under the "Collections Due Process" framework provided under 26 U.S.C. § 6330.

In preparing a defense to the jeopardy levy, Defendants learned that the IRS refused to recognize the legal existence of the Trust and indicated that it would only interact with Plaintiff Richard Thomas. On April 11, 2007, Attorney Burke-Worthen filed

3

a timely request for a Collections Due Process (CDP) hearing pursuant to 26 U.S.C. § 6330.

On June 14, 2007, the IRS delivered a letter to Richard Thomas indicating that it had received Attorney Burke-Worthen's request for a Collections Due Process hearing and the hearing would convene, via telephone conference, on July 10, 2007. Prior to the phone conference with the IRS, Attorney Burke-Worthen contacted Richard Thomas's criminal defense attorney, Attorney Chuck McFarland, who indicated that he would not be participating in the conference and was comfortable with Attorney Burke-Worthen handling the CDP hearing without his participation.

By letter on June 29, 2007, Attorney Burke-Worthen advised Richard Thomas that the purpose of the CDP hearing was "to address the Notice of Jeopardy and Right to Appeal issue only, and there would not be an opportunity . . . to argue the validity of the trust." Attorney Burke-Worthen participated in the July 10, 2007 teleconference hearing with IRS Agent Blais, but despite the issues and arguments raised on Richard Thomas's behalf, the IRS refused to release the levy on the Trust based on a belief that the Trust assets would continue to be depleted and that the IRS would not be able to recoup the taxes owed by Richard Thomas. Attorney Burke-Worthen relayed the substance of the hearing and the conclusion reached by the IRS to both Richard Thomas and Attorney McFarland. In a letter dated July 10, 2007, Attorney Burke-Worthen fully explained the outcome of the July 10, 2007 CDP hearing to Richard Thomas and stated that it would be possible to pursue an appeal of the IRS decision to the U.S. Tax Court once IRS Agent Blais had issued a Notice of Determination.

With the Trust assets frozen, Richard Thomas indicated that he no longer had the funds to pay Attorney Burke-Worthen, or Eaton Peabody generally, for their legal assistance concerning the jeopardy levy. Thereafter, Richard Thomas proceeded to file the appeal of the Notice of Determination to the Tax Court pro se.

On September 18, 2008, the U.S. Tax Court (*M.A. Cohen, J.*) granted the IRS's motion for summary judgment and upheld the imposition of the Jeopardy Levy on the Trust. In February, 2009, Plaintiff Richard Thomas entered a guilty plea to one count of tax evasion for the 2001 tax year in exchange for the Government's voluntary dismissal of the remaining tax evasion counts contained in the January 2006 criminal indictment. On November 16, 2009, the United States District Court for the District of Maine (*Woodcock J.*) sentenced Richard Thomas to 24-months in prison, three years of supervised release and ordered him to pay $15,082 in restitution.

PROCEDURAL BACKGRAOUND

On January 28, 2009 the Plaintiffs filed a five count Complaint against Defendants Eaton Peabody, Attorney Christine Burke-Worthen, Attorney Calvin True, and Attorney Nathaniel Putnam. Defendants filed a M.R. Civ. P. 12(b)(6) motion to dismiss Counts I, III, IV, and V of the Plaintiffs' Complaint on March 16, 2009. The Court granted the Defendants' Rule 12(b)(6) Motion with respect to the Counts I, IV, and V, and denied the Rule 12(b)(6) motion with respect to professional negligence alleged in Count III of the Plaintiffs January 2009 Complaint[1]. *See Thomas v. Eaton Peabody,*

---

[1] The Court (Murphy, J.) found sufficient facts had been alleged in Count III to withstand a Rule 12(b)(6) motion to dismiss, but cautioned that denying Defendants' motion to dismiss count III would not diminish the plaintiffs' burden to prove that but for the Defendants' conduct, the plaintiffs more likely than not

PENSC-CR-2009-22 (Me. Super. Ct., Pen Cty., October 14, 2009) (*Murphy, J.*). After discovery disputes and various attempts to continue the litigation, the Defendants submitted a M.R. Civ. P. 56 motion for summary judgment on November 8, 2010 seeking judgment on Counts II and III of the Plaintiff's Complaint. Plaintiffs filed a memorandum in opposition, without an Opposing Statement of Material Facts. Defendants then filed a Reply. In the Rule 56 motion now before the Court, the Defendants argue that no genuine issue of material fact exists and that as a matter of law the Plaintiffs cannot prevail on the professional negligence claims alleged in Counts II and III of the January 2009 Complaint.

## STANDARD OF REVIEW

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence indicates no genuine issue of material fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. A genuine issue of material fact exists when there is sufficient evidence to require the fact-finder to choose between competing versions of a fact that could affect the outcome of the case. *Id.*; *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. The court will review the evidence in the light most favorable to the non-moving party. *Cookson v. Brewer School Dep't*, 2009 ME 57, ¶ 12, 974 A.2d 276, 281.

Summary judgment is appropriate unless there is sufficient evidence in favor of the non-moving party to support a jury verdict in favor of the non-moving party. *Biette v.*

---

would have been successful in protesting the jeopardy levy. *See Thomas v. Eaton Peabody*, PENSC-CR-2009-22 (Me. Super. Ct., Pen Cty., October 14, 2009) (*Murphy, J.*).

*Scott Dugas Trucking and Excavating Inc.*, 676 A. 2d 490, 494 (Me. 1996). Summary judgment for a defendant is proper when the plaintiff bears the burden of proof on an essential issue and it is clear that a defendant would be entitled to a directed verdict at trial if plaintiff presented the evidence before the court at the summary judgment stage. *Bouchard v. American Orthodontics*, 661 A. 2d 1143, 1145 (Me. 1995). The function of summary judgment is to permit the Court to determine whether a triable issue of fact exists, and there is no issue for trial unless there is sufficient evidence favoring the non-moving party to support a verdict in favor of that party. *Id. See also Champagne v. Mid-Maine Medical Center*, 1998 ME 87 ¶9 (to avoid judgment for defendant as a matter of law, plaintiff must establish a prima facie case for each element of his cause of action) (judgment for defendant as a matter of law is proper when a verdict for the plaintiff would be based on conjecture or speculation).

## DISCUSSION

As a threshold matter, the Plaintiffs have failed to file a M.R. Civ. P. 56(h)(2) opposing statement of material facts[2]. As a consequence, the Court deems as admitted the Defendants' uncontroverted M.R. Civ. P. 56(h)(1) statement of material facts for the purposes of this summary judgment analysis. M.R. Civ. P. 56(h)(4); *see also Dyer v. Dep't of Trans.*, 2008 ME 106, ¶ 15, 951 A.2d 821, 825-26 ("Failure to properly respond to a statement of material facts permits a court to deem admitted any statements not properly denied or controverted.") While the Court is mindful that the Plaintiffs have

---

[2] Moreover, in this case, none of Plaintiffs' filings, whether or not in the form of an Opposing Statement of Material Facts, suggest the existence of any expert witness opinions on: 1) the applicable standard of care and any breach thereof, and/or 2) proximate cause between any alleged breach and plaintiffs' alleged damages (i.e. that plaintiffs would have been successful but for the Defendants' conduct).

7

proceeded in a *pro se* capacity, they continue to prosecute this lawsuit at their own peril. *See Michaud v. Blue Hill Memorial Hospital*, 2008 ME 29, ¶ 8, 942 A.2d 686, 688 (noting that "[t]here exists no general right to representation by counsel in civil litigation between private parties"). The Law Court has affirmed the trial courts of Maine granting motions for summary judgment based solely on the party's failure to comply with M.R. Civ. P. 56, *see Dyer*, 2008 ME 106, ¶ 15, 951 A.2d at 826 (citation omitted), so long as no genuine issue of material fact exists.

Counts II and III of the January 2009 Complaint allege that Eaton Peabody, through its attorneys, provided negligent representation to Richard Thomas, Robert Thomas, and the Ichabod Trust during the time the IRS sought, and ultimately succeeded in securing, a jeopardy levy. It is well-settled in this State that "[t]o prove attorney malpractice, a plaintiff must show: (1) a breach by the defendant of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of that duty proximately caused an injury or loss to the plaintiff." *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, 742 A.2d 93. As a general rule, "expert evidence is required in a legal malpractice case to establish the attorney's breach of duty except in cases where the breach or lack thereof is so obvious that it may be determined by the Court as a matter of law, or is within the ordinary knowledge and experience of laymen." *Jim Mitchell & Jed Davis v. Jackson*, 687 A.2d 1014, 1017 (Me. 1993); *accord Kurtz & Perry, P.A., v. Emerson*, 2010 ME 107, ¶¶ 26, -- A.3d -- . In addition to establishing, generally by expert testimony, the requisite standard of care and breach thereof, the plaintiff must also establish the "proximate cause" prong of the analysis and must demonstrate that "that he or she would have achieved a more favorable result but for the alleged legal malpractice."

8

*Neihoff v. Shankman & Assocs. Legal Ctr., P.A.*, 2000 ME 214 , ¶ 9, 763 A.2d 121, 124.

Proximate cause exists in professional malpractice cases where "evidence and inferences

that may reasonably be drawn from the evidence indicates that the negligence played a

substantial part in bringing about or actually causing the injury or damage and that the

injury or damage was either the direct result or a reasonably foreseeable consequence of

the negligence. *Id. (quoting Merriam v. Wanger, 2000 ME 159* ¶8). While proximate

cause is generally an issue for the fact-finder, *Klingerman v. SOL Corp. of Maine*, 505 A.

2d 474 (1986), the court may enter judgment for a defendant if proximate cause rests on

"pure speculation or conjecture". *Merriam*.


*A.* Count II: Negligence

Count II alleges that Defendants committed malpractice by failing to file a

wrongful levy lawsuit on behalf of the Trust/Trustee (presumably pursuant to 26 U.S.C. §

7426(a)(1)) (permitting those with an interest in the levied property, "other than the

person against whom is assessed the tax out of which such levy arose," to initiate a civil

action in United States District Court for "wrongful levy") and otherwise failed to

properly represent the Trust/Trustee.

The Plaintiffs' arguments in opposing the Defendants' motion for summary

judgment appear to attempt to integrate facts regarding Attorney True's opinion on the

validity of the Trust initially noted in Count I of the Complaint with those contained in

Count II[3].

---

[3] Pursuant to M .R . Civ. P 12(b)(6), the Court (Murphy, J.) previously dismissed Count I of the complaint which alleged that Attorney True negligently advised Robert Thomas that the Ichabod Trust was a valid trust because the damages alleged by Plaintiff Robert Thomas were speculative and causally disconnected from Attorney True's initial advice. *See Thomas v. Eaton Peabody*, PENSC-CR-2009-22, *4-*7 (Me.

Defendants argue that they had no choice but to represent Richard Thomas in the 26 U.S.C. §6330 hearing (Collections Due Process) as the IRS refused to recognize the legal existence of the Trust and would only deal with Richard Thomas with respect to the levy. (Def.'s Supp. S.M.F. ¶18-19, 24-27). Defendants further argue that they concluded that a wrongful levy action (§7426) would not have been "advisable" because the IRS had determined that the Trust was not being "respected" and the IRS refused to recognize the legal existence of the Trust. (Def.'s Supp. S.M.F. ¶18-19, 24-27).

Plaintiffs, who bear the burden of establishing a breach of the applicable standard of care, have not set forth any expert facts in an Opposing Statement of Material Facts (or otherwise) with respect to the standing of the Trust in the §6330 process and/or the advisability of the Trust proceeding under §7426 (or any other available option). These complex tax issues require expert opinion evidence to establish a breach of the applicable standard of care.

Additionally and perhaps most compelling in granting the motion for summary judgment on Count II is the lack of any assertion of facts suggesting that but for the conduct of the defendants, plaintiffs would have been successful in defeating the jeopardy levy. Even if the Court assumes that Defendants breached the standard of care

---

Super. Ct., Pen Cty., October 14, 2009) (*Murphy, J.*). In Plaintiffs' memorandum opposing the motion for summary judgment, Plaintiff Robert Thomas asserted that as a result of Attorney True's negligent advice about the validity of the Trust he "suffered damages equal to the amount of fees paid . . . and the remaining funds in the bank account seized by the IRS." (Robert Thomas Aff. ¶ 19.) Regardless of the damages claimed by Plaintiff Robert Thomas, Robert Thomas would have to prove that Attorney True's advice that on its fact the Trust appeared to be validly formed was wrong (vs. the IRS refused to recognize the Trust for other reasons) and that he breached the applicable standard of care in rendering that opinion. Ascertaining the validity or invalidity of a trust instrument formed under the laws of Nevada requires the type of expertise, familiarity, and training that is neither obvious to the Court nor within the ordinary knowledge of a layman. Absent expert evidence setting forth the standard of care applicable to Attorney True, and that he in fact breached that standard of care when he stated that the Ichabod Trust was facially valid, *Jackson,* 687 A.2d at 1017, the Plaintiff failed to discharge his burden and Defendants remain entitled to judgment as a matter of law on this aspect of the claim.

10

in failing to pursue a wrongful levy action on behalf of the Ichabod Trust and/or Plaintiff Robert Thomas and/or in failing to properly defend the Trust/Trustee in the Collection Due Process proceeding (§6330) and/or in failing to keep the Trustee informed or otherwise, the Plaintiffs have proffered no evidence, expert or otherwise, to suggest that the jeopardy levy would have been lifted from the Trust assets but for the Defendants' conduct. *See Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.*, 1998 ME 210, ¶ 12, 718 A.2d 186, 190 ("Because 'a mere possibility' of success, . . . is insufficient to establish legal malpractice, a summary judgment in favor of the defendant is appropriate when the link between the attorney's act or omission and the alleged damage is overly speculative.") (citation omitted).

There are no factual disputes that a 26 U.S.C. § 7426 suit was not filed and that the Trust/Trustee was not involved in the Collection Due Process proceeding. Plaintiffs bear the burden to establish breach of the applicable standard and that but for the breach Plaintiffs would have been successful in defeating the jeopardy levy. The breach, if any, and the potential success in defeating the jeopardy levy are not matters that are obvious to the Court or within the ordinary knowledge and experience of laymen. Plaintiffs have not set forth any expert opinions regarding breach of the applicable standard by the Defendants or that the jeopardy levy would have been defeated but for Defendants' breach, and it would be a matter of improper conjecture or speculation for a fact-finder to find for the plaintiffs under these circumstances. Thus, Defendants are entitled to judgment as a matter of law on Count II.

11

B. Count III: Negligence

i. Collection Due Process, 26 U.S.C. §6330

Similar to the allegations contained in Count II, Plaintiff Richard Thomas alleges that the firm's representation of him in challenging the jeopardy levy in the Collection Due Process proceeding (§6330) was improper and that Defendants improperly failed to raise four issues during that process[4].

As established by the Defendants' uncontroverted M.R. Civ. P. 56 statement of material facts, the IRS placed a jeopardy levy on the Ichabod Trust, freezing its assets, and treated the trust as the alter-ego of its beneficiaries, Plaintiff Richard Thomas and his wife. (Def.'s Supp. S.M.F. ¶ 18.) To the extent the IRS treated the trust as a sham and refused to engage with either the Ichabod Trust itself, or Plaintiff Robert Thomas, as Trustee, the Defendants' representation of Plaintiff Richard Thomas met the stated goal of defending Trust assets from the jeopardy levy. (Def.'s Supp. S.M.F. ¶¶ 16, 26.) From facts deemed admitted by operation of M.R. Civ. P 56(h)(4), the Defendants' were left with no reasonable alternative but to defend the trust assets in the Collections Due Process hearing in the name of Plaintiff Richard Thomas. Plaintiffs have not proffered any expert opinions to demonstrate that a conflict of interest existed between the Trust/Trustee and Richard Thomas with respect to the goal of defending the Trust assets from the jeopardy levy (sole beneficiaries of the Trust were Richard Thomas and his wife).

---

[4] The four issues Richard Thomas alleges should have been raised in the CDP are:

1) Richard Thomas did not receive a Notice and Demand for Payment from the IRS; 2) Richard Thomas did not receive pre-assessment Audit Trail evidence of an assessment of his income tax liability for taxable years 1995 and 1996, disputing the underlying deficiency and resulting assessment; 3) the IRS did not comply with Richard Thomas' discovery requests in his criminal case; and 4) the criminal freeze placed on the Trust account, as a result of the jeopardy levy imposed by the IRS, denied Richard Thomas access to Trust funds that would have permitted him to hire an attorney of his choice for the purposes of defending him against the tax evasion charges.

12

Whether the Defendants breached the applicable standard of care by representing Richard Thomas in the Collection Due Process hearing and/or in failing to argue the four issues raised by the Plaintiffs in the CDP hearing requires expert support, and Plaintiffs have failed to set forth any expert opinions to support that Defendants breached the applicable standard of care.

In addition to the Plaintiffs' failure to establish the appropriate standard of care or the Defendants' breach, the Plaintiffs have also failed to set forth any facts suggesting that they would have been successful in defending the assets of the Trust against the jeopardy levy or otherwise if the Defendants had represented either the Trust itself or its Trustee or raised any of the four issues Plaintiffs argue should have been raised in the Collection Due Process proceeding. Consequently, Defendants are entitled to judgment on this part of Count II as a matter of law.

ii. 26 U.S.C. §7429

Robert Thomas' final claim concerns the method by which the Defendants attempted to defend the Trust's assets. It is undisputed that Attorney Burke-Worthen notified the IRS of the Plaintiffs' intent to pursue a review of the jeopardy levy through the "Collections Due Process" procedure outlined in 26 U.S.C. § 6330. There is also no dispute that Defendants' followed the "Collections Due Process" framework to its logical end—up until the point Plaintiff Richard Thomas lacked the funds to continue paying for the firm's services. (*See* Def.'s Supp. S.M.F. ¶¶ 28-37.) However, Plaintiff Richard Thomas claims that the Defendants should have sought to defend the Trust from the jeopardy levy by employing the administrative and judicial review procedures provided

13

under 26 U.S.C. § 7429 instead of or in addition to the "Collections Due Process" mechanism made available under 26 U.S.C. § 6330.

Defendants argue, with record support, that §7429 review of the jeopardy levy did not apply in Richard Thomas' situation as the levy was made more than thirty (30) days after the initial assessment[5]. (See Def.'s Supp. S.M.F. ¶24). Plaintiff's argue, without any record support, that §7429 did apply to Richard Thomas' situation. Whether or not §7429 review was an available mechanism which Defendants should have pursued is a matter which requires expert support, and the record is devoid of any expert evidence that §7429 review should have been pursued. The Plaintiffs have failed to set forth facts regarding expert testimony that would establish either the standard of care or Defendants' breach thereof by not pursuing a §7429 process. The intricacies of the Internal Revenue Code and the methods a taxpayer may and should use to challenge a levy are certainly not within the ordinary knowledge of laymen or obvious to the Court. Accordingly, it was incumbent on the Plaintiffs to provide competent expert testimony to support their view about the availability and advisability of the 26 U.S.C. §7429 process, and that the firm's

---

[5]     The Defendants have addressed the outstanding concern voiced by the Court in its previous order on this matter. *See Thomas v. Eaton Peabody*, PENSC-CR-2009-22, *9 n.3 (Me. Super. Ct., Pen Cty., October 14, 2009) (*Murphy, J.*) (withholding M.R. Civ. P. 12(b)(6) dismissal of Count III of the Complaint because there was a question as to whether the Defendants should have pursued action under 26 U.S.C. § 7429). The plain language of 26 U.S.C. § 7429(a)(1)(A), the information provided in the Internal Revenue Manual, and cases interpreting this particular statutory provision, all support the Defendants' assertion that the framework for contesting a jeopardy levy like the one initiated in this case was solely through the "Collections Due Process" procedure contained in 26 U.S.C. § 6330. The uncontroverted fact is that §7429 would only be available in the event the IRS had issued its jeopardy levy within 30-days of the initial assessment, which was certainly not the case in this instance. *See* Internal Revenue Manual § 5.11.3.6 *available at* http://www.irs.gov/irm/part5/irm_05-011-003.html ("If the jeopardy levy is issued more than 30 days after the notice and demand and the taxpayer has not already been issued their appeal rights under IRC 6330, the IRS must notify the taxpayer of their appeal rights under IRC 6330 . . . ."); *Carter v. US*, 2009 U.S. Dist. LEXIS 114013, *19-20 (D. N.M. 2009) ("Section 7429 is titled "Review of jeopardy levy or assessment procedures," and accords "administrative review". . . to levies '*made under section 6331(a) less than 30 days after notice and demand for payment is made*.") (emphasis added).
       The IRS's initial March 2007 Notice of Jeopardy Levy and Right to Appeal provided information concerning the § 7429 review process, but the later delivered May 2007 Notice of Jeopardy and Right to Appeal provided information only regarding the "Collection Due Process" framework outlined in § 6330.

14

failure to pursue administrative and judicial review under 26 U.S.C. §7429, if available, constituted a breach of the applicable standard of care.

Moreover, for purposes of this Motion for Summary Judgment, even assuming the §7429 process was available as a possible avenue to defend the Trust assets, Plaintiffs have failed to proffer any facts suggesting that a 26 U.S.C.§7429 review would have provided the Plaintiffs with a favorable result (the release of IRS jeopardy levy placed on the Trust assets).

In accord with the guidance provided in *Jackson* and *Steeves,* since Plaintiffs have not provided facts from an expert that the Defendants breached a duty of care and that had the Defendants pursued a § 7429 review Plaintiffs would have received a favorable result, summary judgment is appropriate on this aspect of Count III.

For the foregoing reasons, Defendants are entitled to judgment as a matter of law on all aspects of Count III.

The entry is:

1. Defendants' M.R. Civ. P. 56 Motion for Summary Judgment, filed on November 8, 2010, is **GRANTED**.
2. This order is incorporated into the docket pursuant to M.R. Civ. P. 79(a).

Date: February 7, 2011

Ann M. Murray
Justice, Superior Court

Decision and Order entered upon the docket on 2/14/11.

15