STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-09-415
JAW - CUM- 7/23/2012

SUSAN M. ROBINSON, as Personal
Representative of the Estate of
BEVERLY MAE CHARRIER,

       Plaintiff

v.

CEDARS NURSING CARE
CENTER, INC.,

       Defendant

STATE OF MAINE
Cumberland, ss., Clerk's Office

JUL 2 3 2012

RECEIVED

## DECISION AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Before the court is Cedars Nursing Care Center, Inc.'s Motion for

Summary Judgment on all counts of the plaintiff's Complaint. The motion has

been fully briefed and oral argument was held on June 29, 2012.

### BACKGROUND

This case arises from the care Beverley Mae Charrier received while a

patient at Cedars Nursing Care Center, Inc. ("Defendant" or "Cedars") from June

6, 2006 until her death on September 20, 2007. (Def. SMF ¶¶ 1-2.) There are

several specific events that the plaintiff, Susan Robinson who is the personal

representative of Mrs. Charrier's (her mother) estate ("Plaintiff"), has identified

as the basis for her claims.

Mrs. Charrier suffered a broken arm in a fall on April 5, 2007 while under

the care of Cedars. She fell again on May 5, 2007, reinjuring her arm. Both falls

were unwitnessed. The Plaintiff complains that, after becoming aware of the risk

1

of falls, as a result of the first fall, the Defendant failed to impose protocols that would have protected her mother from the second fall. Mrs. Charrier developed a pressure sore on her coccyx that was documented as a stage II decubitus ulcer in August 2006 and again in the summer of 2007. The Plaintiff claims that, had the Defendant repositioned Mrs. Charrier every two hours, as required by the standard of care, the healing or progression of the sore would have been better and the failure to do so caused her mother extreme pain and exacerbated the sore such that, at the time of Mrs. Charrier's death, it was quite large and foul smelling. The Plaintiff also claims that the Defendant's failure to monitor Mrs. Charrier's pain medication patch once per shift, was a deviation from the standard of care that caused her mother to be without pain medication at times.[1] This patch only needed to be replaced every third day, meaning that if the patch came off in the first day, Mrs. Charrier could be missing pain medication for several days. The Plaintiff also claims that Cedars failed to notify her and her mother of these significant medical events in breach of the standard of nursing care and that this deprived them of the opportunity to consider moving Mrs. Charrier to a different facility.

The Plaintiff filed a Notice of Claim, pursuant to 24 M.R.S. § 2903, on July 14, 2009. In the spring of 2011, the parties agreed to waive the panel proceedings and to proceed directly to the Superior Court to resolve this matter. The Plaintiff then filed the Complaint on April 19, 2011 alleging five counts against Cedars: negligence (Count I), negligent infliction of emotional distress (Count II),

---

[1] The Complaint also asserts these causes of action against co-defendants Michelle Booker and Diversified Staffing Group. Michelle Booker was a temporary worker supplied to Cedars by Diversified. Ms. Booker has been convicted of stealing Mrs. Charrier's pain medication patch in early May 2007. The Plaintiff has settled with both Ms. Booker and Diversified and they have been dismissed from the case.

2

negligent hiring and supervision (Count III), intentional infliction of emotional distress (Count IV), and punitive damages (Count V).

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (*quoting Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178). "Even when one party's version of the facts appears more credible and persuasive to the court," summary judgment is inappropriate because the court may not weigh the evidence presented. *Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 17, 917 A.2d 123. In considering a motion for summary judgment, the court should view the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702.

1.    Vicarious Liability for Failure to Properly Administer Pain Medication

The Defendant contends that the Plaintiff's settlement with Booker and Diversified Staffing prohibits her claim against Cedars on a vicarious liability theory. The law permits recovery from someone who is not a joint tortfeasor but who has a principal/agent relationship with the tortfeasor in order to allow the innocent victim a greater likelihood of recovery. *See e.g. Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380, 1383 (Pa. 1989). Although the Law Court has not definitively stated whether a settlement with one of the defendants precludes

3

recovery from the other when the parties are not joint tortfeasors, at least three Superior Court cases have held that a settlement with an agent releases the principal from liability based on the agent's actions. *Hill v. Sullivan*, 2008 Me. Super LEXIS 108, * 5-6 (May 21, 2008); *Forbes v. Osteopathic Hosp. of Me. Inc.*, 1987 Me. Super. LEXIS 108, * 2 (April 15, 1987); *Hewitt v. Kennebec Valley Mental Health Ctr.*, 1986 Me. Super. LEXIS 163, * 6-7 (July 22, 1986), *aff'd in relevant part by an equally divided court, vacated in part*, 529 A.2d 802 (Me. 1987). One basis for this holding is that, to hold otherwise would create a circle of indemnity, particularly in the case of a Pierringer release. *Hill*, 2008 Me. Super. LEXIS 108, * 7. If at trial the plaintiff is awarded additional recovery against the principal, the principal is entitled to indemnity from the agent/settling party, and, by the terms of the Pierringer release, the agent/settling party is entitled to indemnity from the plaintiff. Therefore, there is no logical reason to allow such a claim to go forward.

To the extent that the Plaintiff's claims against the Defendant regarding the failure to administer pain medication are based on a vicarious liability theory for the actions of Booker and/or Diversified Staffing, those claims cannot proceed and the Defendant is entitled to summary judgment. The Plaintiff argues that, in addition the vicarious liability for the intentionally tortious conduct of Booker and/or Diversified, the Defendant is liable for its own direct negligence for failing to establish a protocol for checking the integrity of pain medication patches during each nursing shift. (Pl. Opp. 14-15.) That claim is examined below.

4

## 2. Negligent Supervision and/or Negligent Hiring

The Defendant argues for summary judgment in its favor on the grounds that the Maine courts have not recognized the existence of these torts in this type of factual situation. The Law Court has recognized negligent supervision as a tort but only to the extent that there exists a "special relationship" such that the employer recognizes a duty to protect people from third parties. *Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 25, 871 A.2d 1208. The Law Court has recognized the four kinds of special relationships stated in section 314A of the Restatement (Second) of Torts: (1) common carriers and passengers; (2) innkeepers and guests; (3) possessors of land and invitees; and (4) those people required by law to take, or who voluntarily take, others into physical custody depriving the other of normal ability to protect themselves. *Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 18, 970 A.2d 310. It has also recognized as a special relationship "those fiduciary relationships in which there exists a 'great disparity of position and influence between the parties.'" *Id.* at ¶ 19 (*quoting Fortin*, 2005 ME 57 at ¶ 34). Even if a complaining party can establish the existence of a special relationship, the tort only provides recovery for actions of an employee done <u>outside</u> the scope of employment. RESTATEMENT (SECOND) TORTS § 317.

The Law Court has recognized negligent hiring as a tort independent of negligent supervision but only in the context of hiring an independent contractor as stated in section 411 of the Restatement (Second) of Torts. *Dexter v. Town of Norway*, 1998 ME 195, ¶ 10, 715 A.2d 169. Although the Law Court has not extended the application of this tort, at least one Superior Court case has stated that there is no reason that the principles applicable to the hiring of an independent contractor should not also apply to the hiring of an employee.

5

*Gniadek v. Camp Sunshine at Sebago Lake*, 2010 Me. Super. LEXIS 10 * 9-10, (Jan.15, 2010, *aff'd* 2011 ME 11, 11 A.3d 308 (finding the hiring of a camp counselor was not negligent because, even if the camp's screening procedures were inadequate, this counselor would not have been screened out by adequate procedures).

Regardless, the Plaintiff has failed to dispute the Defendant's claims that these torts are not recognized in Maine and has not asserted any facts that would support the existence of a special relationship, that allege acts performed outside the scope of employment, or that allege that different hiring procedures would have prevented any injury to Mrs. Charrier. Summary judgment is entered in favor of the Defendant on this claim.

### 3. Notice of Claim

The Defendant argues that the remaining claims asserted in the Complaint must fail because the Notice of Claim, filed pursuant to the Maine Health Security Act, 24 M.R.S. §§ 2853, 2903, fails to give notice of these causes of action. Because compliance with the notice of claim requirements is a jurisdictional bar to bringing litigation in the Superior Court, any claim not made within the notice of claim is similarly barred. The Defendant alleges that the Plaintiff's Notice of Claim does not include any allegations of intentional infliction of emotional distress, negligent hiring, or punitive damages.

The Maine Health Security Act (MHSA) defines its scope of applicability in very broad terms. *Saunders v. Tischer*, 2006 ME 94, ¶ 12, 902 A.2d 830. It applies to any "action for professional negligence" which is defined as "any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or

6

failure to provide health care services." 24 M.R.S. § 2502(6). As this definition reveals, an action for professional negligence does not need to be based in negligence. *Saunders*, 2006 ME 94 at ¶ 13. An action for professional negligence may not be brought in the courts until a notice of claim has been filed and the mandatory pre-litigation screening process has been completed. 24 M.R.S. § 2903. The notice of claim must contain a statement of "the nature and circumstances of the injuries and damages alleged." 24 M.R.S. § 2853(1).

The Plaintiff's Notice of Claim sufficiently makes out a claim for intentional infliction of emotional distress[2] and negligent hiring and/or supervision but fails to state any circumstances from which it should be understood that she was pursuing a claim for punitive damages as part of her claims. Punitive damages is not an independent cause of action but is often pleaded separately to put parties and the court on notice of the damages claimed. *Murray v. Murray*, 2006 Me. Super. LEXIS 259, * 10 (Dec. 13, 2006). Although the Plaintiff would not be required to separately describe the basis for punitive damages, the notice of claim must contain the "nature …of the…damages." Failing to describe the malice element precludes the Plaintiff's recovery of punitive damages.

---

[2] The Defendant argues that the Plaintiff failed to allege any intentional behavior that could be the basis for an intentional infliction of emotional distress claim. However, that claim may be based on reckless as well as intentional conduct and the notice of claim clearly asserts that the Defendant acted recklessly in the provision of care to Mrs. Charrier.

7

4.    Direct Negligence Claims

The Defendant argues that the Plaintiff has failed to generate the factual support necessary to sustain her negligence claims against Cedars because her designated expert, Nancy Simpson, has not identified any actions that Cedars should have taken that would have prevented any of the injuries that Mrs. Charrier sustained while in its care. Without expert testimony, the Defendant argues, the jury would be required to make inferences as to the causation of injury based on complex medical facts.

To establish liability in a medical negligence case, the Plaintiff must prove that the care given was a deviation from the standard of care in the field and that, as a natural consequence of the deviation from the standard of care and without any intervening cause, the patient was injured. *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778. There must be evidence that the negligence probably (i.e. more likely than not) was the cause of the injury. *Id.* at ¶ 11. Speculation as to the cause or simple possibility that the negligence caused injury is not enough. When there are complex medical facts involved, leaving a jury to make its own inferences and conclusions regarding causation goes beyond the jury's role. *Id.* at ¶ 17.

The Plaintiff alleges that each of the following acts were negligent and proximately cause injury to Mrs. Charrier: (1) Cedar's failure to have a protocol for checking the status of pain medication patches during each shift; (2) Cedar's failure to reposition Mrs. Charrier every two hours such that she developed a decubitus ulcer; (3) Cedar's failure to assess the risk of falls and to intervene, which led to a second fall; and (4) Cedar's failure to communicate clinically significant events to the patient and family.

8

*a.    Checking Integrity of Pain Medication Patch*

The Complaint is broad enough to encompass this claim and the Plaintiff has provided enough support to show prima facie case. The Plaintiff has established that the standard of care in the nursing field is to check the integrity of a pain medication patch once per shift (Pl. Add'l SMF ¶ 89), she then points to the medication log to show that the staff did not regularly check the medication patch (Pl. SMF ¶ 41[3]). On the days that the patch was not to be changed, an "X" is placed in the corresponding box. Although this "X" does not conclusively prove that no check was made, construing the facts in the light most favorably to the Plaintiff and without contrary testimony as to the meaning of the "X," the court must accept this argument. Lastly, the Plaintiff provides sufficient evidence of damages because it is undisputed that the pain medication was removed on May 6, 2007 and that Mrs. Charrier was consequently without medication for some period of time.

*b.    Failure to Reposition Mrs. Charrier Every Two Hours*

The facts reveal that Mrs. Charrier developed a decubitus ulcer in August 2006 and again in the summer of 2007. The second sore persisted and was present at the time of her death. The Plaintiff alleges that Cedars' failure to consistently make skin assessments and to reposition Mrs. Charrier in her bed every two hours was a breach of the standard of care that caused the ulcer and Mrs. Charrier's pain and suffering. Simpson testified that, based on the records, she does not find evidence that skin assessments were consistently completed (Pl. Add'l SMF ¶ 84) and, without the staff completing those assessments, the

---

[3] The Plaintiff offers other statements of fact to support this claim (i.e. Pl. Add'l SMF ¶¶ 46-48, 51, 59) but these facts are not supported by record citations as required by M.R. Civ. P. 56(h)(4) and the court cannot consider them.

9

nurse practitioner and doctor who were treating Mrs. Charrier may not have been made aware of this important issue (Pl. Add'l SMF ¶ 79). She also testified that the records show that the staff failed to reposition Mrs. Charrier every two hours on a significant percentage of days during the times when she had an acute sore. (Pl. Add'l SMF ¶¶ 28, 29.)

The Defendant argues that the Plaintiff's expert cannot articulate what Cedars should have done to prevent the development of bedsores and to alter the course of an existing ulcer. (Def. SMF ¶ 16.) However, the Plaintiff states that had the Cedars' staff consistently made skin assessments and communicated that information to the physicians and repositioned the patient every two hours, it is more likely than not that the bedsore would not have emerged. (Pl. Add'l SMF ¶ 82.)

Simpson's testimony is based on the contents of the medical records. When she states that a certain act was not done, the basis for that statement is that the records do not reflect that it was done. Construing this fact in the light most favorable to the Plaintiff, and in the absence of contrary facts, the Plaintiff has shown evidence of negligence. Simpson has stated as her expert opinion that different care (i.e. more consistent skin assessments and repositioning) would have prevented the emergence of the ulcer. (Pl. Add'l SMF¶ 82.) However, Simpson also testified that she could not identify any course of treatment that would have altered the course of the healing of the ulcer. Thus, the negligence claim may go forward on the emergence of the ulcer but not the course of the healing of the wound.

10

*c.* *Failure to Implement Fall Prevention Interventions*

The Defendant argues that the Plaintiff has failed to state a prima facie case of negligence with regard to the second fall that Mrs. Charrier experienced at Cedars on May 5, 2007 because the Plaintiff's expert witness has not identified a course of action that she can say more likely than not would have prevented the second fall. (Def. Mem. 8-9.) The Defendant mischaracterizes the expert's testimony. The Defendant states that the expert could not identify a specific act that should have been done that would have prevented the second fall. (Def. SMF ¶ 13, citing to Simpson Dep. Dec. 29, 2011 at 98-99, 104-106.) It is true that Simpson did not identify a single procedure that should have been done. However, the substance of this testimony is that there are several available protocols that would have reduced the risk of a second fall and that it was within the nursing home staff and medical staff's discretion to determine which protocols were the most appropriate given a specific evaluation of the patient's condition and needs. (Pl. Add'l SMF ¶ 94, citing Simpson Dep. Dec. 29, 2011 at 71-72, 76, 85, 93-94.) Her testimony is that this evaluation was not done and no additional interventions were implemented; that is, a complete inaction rather than a failure to complete a specific task.

The Plaintiff argues that Simpson sufficiently testified to the standard of care ("to provide every intervention that can possibly protect someone from falling"), the specific types of interventions that Cedars could have implemented to meet this standard, and that she believed that if those interventions were implemented, the second fall would have been prevented. (Pl. Opp. 13; Pl. Add'l SMF ¶¶ 92, 94.) The Plaintiff has stated a prima facie case for negligence by

11

showing that no additional interventions were put into place and that it is her opinion that this would have prevented both falls. (Pl. Add'l SMF ¶ 94.)

### d. Failure to Notify Family of Significant Medical Events

The Defendant argues that the Plaintiff is not entitled to relief on this claim because it was not specifically stated in the Complaint and because it relates to the Defendant's failure to notify Ms. Robinson of Ms. Booker's criminal act of removing the pain medication patch which is barred by the settlement. (Def. Mem. 17.) The Plaintiff points to the failure to notify her of an emerging ulcer developing in August 2006 and failure to notify her of the Stage II ulcer her mother had beginning in April 2007 (Ms. Robinson did not become aware until summer 2007 when her mother told of the ulcer). (Pl. Add'l SMF ¶ 99.) She also states that the Defendant failed to notify her of "incidents that were important." (Pl. Add'l SMF ¶ 86.) She argues that the standard of nursing care includes appropriate communication with patients and/or family members and that the failure to notify her of these events deprived her and her mother of the opportunity to evaluate the benefits of moving to another facility. (Pl. Add'l SMF ¶¶ 86, 87, 105.)

The Plaintiff has established that the standard of care is for a nursing home to notify the family and physician of any missed medication or fall. (Pl. Add'l SMF ¶¶ 85, 87.) Construing the facts in the light most favorable to the Plaintiff, the Defendant has not shown that it is entitled to judgment as a matter of law on this claim.

### e. Negligent Infliction of Emotional Distress

Neither party specifically addresses Count II of the Complaint alleging negligent infliction of emotional distress. To make a claim for negligent infliction

12

of emotional distress a plaintiff must prove all of the elements of negligence, however, the concept of "duty" is not based on foreseeability. *Curtis v. Porter*, 2001 ME 158, ¶18, 784 A.2d 18. In Maine, the Law Court has recognized a duty to act reasonably to avoid emotional harm to others in bystander liability actions, when there is a special relationship between the parties, and when the wrong doer has committed another tort. *Id.* at ¶ 19. "However…when the separate tort at issue allows a plaintiff to recover for emotional suffering, the claim for negligent infliction of emotional distress is usually subsumed in any award entered on the separate tort." *Id.*

The Plaintiff has not alleged bystander liability or a special relationship giving rise to a claim for negligent infliction of emotional distress. However, the Plaintiff may continue to seek damages for any emotional harm suffered by Mrs. Charrier through the claim for direct negligence against the Defendant.

5.     Intentional Infliction of Emotional Distress

In order to state a prima facie case for intentional infliction of emotional distress, a plaintiff must present sufficient facts to show "that the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from its conduct"; that this conduct was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; and that the plaintiff's severe emotional distress was the proximate result of the defendant's conduct. *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842. Although the determination of the outrageousness of the defendant's conduct is a question of fact, the court is required to determine whether the conduct alleged is sufficient to justify a finding by a jury. *Id.* at ¶ 16.

13

The Defendant argues that the Plaintiff fails to make a prima facie case because the conduct alleged is not intentional or reckless but merely negligent, that it was not so extreme or outrageous as to exceed the bounds of decency, and because she has not offered any evidence of emotional harm to Mrs. Charrier. (Def. Mem. 11-13.) The Plaintiff asserts that the cumulative conduct of the Defendant rises to the level of outrageousness. (Pl. Opp. 18-19.) However, the Plaintiff has not alleged that the behavior rises to recklessness as she states that it is the "combined negligence" that is outrageous. (Pl. Opp. 19.)

The Plaintiff fails to make a prima facie case for intentional infliction of emotional distress. The threshold of extreme and outrageous conduct is very high and while the alleged treatment of Mrs. Charrier is troubling, it does not rise to this standard. Furthermore, the Plaintiff has failed to establish that the Defendant's conduct rose to the level of recklessness and has not alleged any facts to support a finding that Mrs. Charrier experienced severe emotional distress. All of the damages that have been alleged are physical.

**The entry is:**

The Defendant's Motion for Summary Judgment is GRANTED IN PART. Judgment is entered in favor of the Defendant on Counts II, III, IV, and V of the Complaint.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: 7/23/12

Joyce A. Wheeler
Justice, Superior Court

14