2000 ME 159

**Laurel MERRIAM**

v.

**William WANGER.**

Supreme Judicial Court of Maine.

Argued June 5, 2000.
Decided Aug. 15, 2000.

William D. Robitzek, Esq., (orally), Paul F. Macri, Esq., Berman & Simmons, P.A., Lewiston, for plaintiff.

George C. Schelling, Esq., (orally), Sandra L. Rothera, Esq., Gross, Minsky & Mogul, P.A., Bangor, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

ALEXANDER, J.

[¶ 1] William Wanger, M.D., appeals from the judgment entered in the Superior Court (Oxford County, *Kravchuk, J.*) on a jury verdict in favor of Laurel Merriam in her medical malpractice action against him. On appeal, Wanger claims that: (1) there is insufficient evidence of proximate cause; and (2) admission of certain portions of Merriam's expert testimony violated the discovery rules and unfairly prejudiced him. Because the record contains no evidence of causation beyond what may be characterized as speculation, we vacate the judgment.

## I. CASE HISTORY

[¶ 2] In 1992 and 1993, Laurel Merriam was exploring medical procedures to restore her fertility. On January 25, 1993, as part of this process, Merriam underwent a procedure which Merriam acknowledged created a risk of Pelvic Inflammatory Disease (PID).

[¶ 3] On February 23, 1993, Merriam visited the emergency room at the Rum-

ford Community Hospital complaining of abdominal pain. Her pain was so severe that she required the assistance of a friend to walk into the emergency room. At the emergency room, she was treated by Wanger who took Merriam's history and examined her. In the course of his examination, Wanger found that Merriam had an elevated SED rate of 46, an elevated white blood cell count of 16.6, a respiration rate of 20, and normal blood pressure and temperature. He also tested her for chlamydia and gonorrhea, which are both sexually transmitted diseases. Based on his examination, Wanger diagnosed Merriam's condition as PID, prescribed an oral antibiotic, and sent her home.

[¶ 4] On March 16, 1993, Merriam was examined by another doctor who discovered an abscess in her abdomen. In April and May 1993, Merriam underwent surgeries to alleviate the abscess. Initially Merriam felt better, but by August 1993 she was again suffering dull pains in her abdomen. Because of the removal of one of her ovaries and the scarring that had occurred around the other in the earlier surgeries, Merriam underwent a hysterectomy in May 1994, to relieve the abdominal pain she had continued to suffer.

[¶ 5] At trial, Merriam presented the testimony of three expert witnesses seeking to establish (i) that Wanger acted negligently on February 23; and (ii) that his negligence resulted in Merriam being required to undergo further surgical procedures to alleviate the abdominal pain she was suffering, including the total hysterectomy that eliminated the possibility that she would regain her fertility.

[¶ 6] After hearing the evidence, the jury concluded that Wanger was negligent, that his negligence was the proximate cause of Merriam's injuries, and that Mer-

riam had suffered $150,000 in damages as a result. On appeal, Wanger argues that there was insufficient evidence from which the jury could have concluded that his negligence was a proximate cause of the injuries Merriam suffered. He also challenges two evidentiary rulings by the trial court.

## II. DISCUSSION

[¶ 7] This Court reviews a claim of insufficiency of the evidence to support a verdict to "determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury verdict." *Kaechele v. Kenyon Oil Co., Inc.*, 2000 ME 39, ¶ 17, 747 A.2d 167, 173 (quoting *Bates v. Anderson*, 614 A.2d 551, 552 (Me.1992)). "A judgment as a matter of law is improper if 'any reasonable view of the evidence could sustain a verdict for the opposing party.'" *Id.* (quoting *Currier v. Toys 'R' Us, Inc.*, 680 A.2d 453, 455 (Me.1996)).

[¶ 8] "[T]o establish liability in a medical malpractice case, the plaintiff must show that the defendant's departure from a recognized standard of care was the proximate cause of the injury." *Phillips v. Eastern Maine Med. Ctr.*, 565 A.2d 306, 307 (Me.1989).[1] Proximate cause is "that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred." *Webb v. Haas*, 1999 ME 74, ¶ 20, 728 A.2d 1261, 1267 (quoting *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 8, 695 A.2d 1206, 1209).

> Evidence is sufficient to support a finding of proximate cause if the evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part

1. "Negligence alone on the part of an actor is not enough to impose liability. Negligence is actionable only if it proximately causes an injury to another—that is, if it 'is a substantial factor in bringing about the harm and ... there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in harm.'" *Taylor v. Hill*, 464 A.2d 938, 944 n. 2 (Me.1983) (quoting *Wing v. Morse*, 300 A.2d 491, 495–96 (Me.1973)).

in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence. The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to a judgment.

*See Crowe v. Shaw,* 2000 ME 136, ¶ 10, 755 A.2d 509, 512 (internal citations omitted). *See also Corey v. Norman, Hanson & DeTroy,* 1999 ME 196, ¶ 14, 742 A.2d 933, 940; *Shaw v. Bolduc,* 658 A.2d 229, 235–36 (Me.1995); *Wing v. Morse,* 300 A.2d 491, 495–96 (Me.1973).

[¶ 9] A consequence of negligence is reasonably foreseeable if the negligence has created a risk which might reasonably be expected to result in the injury or damage at issue, even if the exact nature of the injury need not, itself, be foreseeable. *See Colvin v. A R Cable Services–ME, Inc.,* 1997 ME 163, ¶ 7, 697 A.2d 1289, 1290–91; *Quinn v. Moore,* 292 A.2d 846, 850 (Me.1972). However, reasonable foreseeability does not equal causation. To support a finding of proximate cause, there must be some evidence indicating that a foreseeable injury did in fact result from the negligence.

[¶ 10] Proximate cause is generally a question of fact for the jury, but the court has a duty to direct a verdict for the defendant if the jury's deliberation rests only on speculation or conjecture. *See Cyr v. Adamar Assocs., Ltd. Partn.,* 2000 ME 110, ¶ 6, 752 A.2d 603; *Champagne v. Mid–Maine Med. Ctr.,* 1998 ME 87, ¶ 10, 711 A.2d 842, 845.

[¶ 11] For purposes of our analysis here, Wanger's negligence is established. We assume also that Wanger's negligence created a reasonably foreseeable risk of Merriam's damages. The issue is whether there is sufficient evidence to establish that it is more likely than not that Wanger's negligence played a substantial part in bringing about Merriam's extended period of pain and loss of fertility.

[¶ 12] Each of Merriam's expert witnesses testified that she was suffering from an abdominal infection on the night of February 23, when she went to the emergency room. In addition, there was testimony indicating that Wanger could have and should have hospitalized Merriam and done more tests and/or referred Merriam to a surgeon at the hospital for further observation and evaluation. Two experts testified that irreversible damage to Merriam's reproductive system was a reasonably foreseeable risk of Wanger's negligent diagnostic practices, but no expert testified that Merriam's problems would certainly, or more likely than not, have been avoided had Wanger acted properly.

[¶ 13] Addressing Wanger's failure to properly diagnose and treat Merriam on February 23, Dr. John Irwin testified:

Clearly pelvic inflammatory disease, even the classic sense, severely impairs the patient's ability to have children. If it's too far advanced and the patient is not treated, the patient will lose tubes and ovaries. It becomes abscessed. It progresses. Even if you don't lose them, the tube itself can be scarred from the infection and not be able to pass eggs. You have the ovaries on the outside, far outside. The eggs pass down the tube. If the tube becomes narrow or scarred because of the infectious process, then the egg can't get through; and so the patient cannot have children; so, you know, we don't want to be misled to thinking if somebody comes in and have the diagnosis of PID that this simply means fine, here's the antibiotic choice, let them go home.

If the patient has—comes in with a vaginal discharge, not too much pain, and just had a day or two of symptoms, fine, initiate some treatment and schedule follow-up. If the patient comes in with peritonitis and bent over in pain and you believe you have PID, that requires fur-

ther evaluation soon, immediately. You can't—if you dismiss it, then you run the risk of a patient having permanently damaged [a] tube and ovary.

[¶ 14] Another expert witness, Dr. William P. Carter, testified that if an individual demonstrates peritoneal signs such as those Merriam presented to Wanger, that indicates a serious infection which requires hospitalization for further testing and evaluation. He testified that if a laparoscopy had been performed it would have disclosed appendicitis or the abscess and surgery would have been performed. With respect to Wanger's decision to not hospitalize Merriam, Carter testified:

[Y]ou've got to be very serious about treating this infection. You need to have this woman in the hospital. You need to get the appropriate physicians involved to take care of her and you may stand some chance of, one, saving the tube or preventing any of the complications which can occur with a pelvic inflammatory disease and she certainly did have complications requiring repeated drainage of an abscess. He's requiring a surgical procedure that ultimately removed her uterus at some later date.

[¶ 15] However, neither expert testified that Merriam's damages would have been avoided had Wanger acted properly, and neither was directly asked that question.

[¶ 16] In this case, the jury was properly instructed on proximate cause, but the record contains no evidence upon which the jury could have found it more likely than not that Merriam's damages were proximately caused by Wanger's negligence. Without more, evidence of negli-gence and foreseeability of a risk does not permit a jury to infer causation.

[¶ 17] Allowing a jury to infer causation on complex medical facts without the aid of expert testimony on the subject and without some showing that Wanger's conduct was "more likely than not" a cause of Merriam's injury, stretches the jury's role beyond its capacity. Standards for demonstrating the elements of professional negligence do not differ from profession to profession. An attorney may not be subject to liability absent actual evidence of causation. *See e.g., Corey,* 1999 ME 196, ¶ 14, 742 A.2d at 940. Likewise, a medical professional may not be subject to liability absent actual evidence of causation. *See Champagne,* 1998 ME 87, ¶¶ 10–12, 711 A.2d at 845–46.

[¶ 18] In the matter before us, not only is there a total absence of evidence that it was more likely than not that Wanger's actions were a cause of Merriam's harm, the evidence before the jury suggested several other potential sources of harm. Although there may be multiple causes of any one injury, the existence of multiple possibilities makes the need for evidence of Wanger's responsibility for causation all the more important.

The entry is:

Judgment vacated. Remanded for entry of judgment for Wanger.