

STATE OF MAINE            SUPERIOR COURT
PENOBSCOT, SS.             CIVIL ACTION
                            Docket No. CV-04-44

JUH-PEN-5/2/06

FILED & ENTERED
SUPERIOR COURT

MAY 03 2006

PENOBSCOT COUNTY

Kevin Hall et al.,
      Plaintiffs


v.                        Order (Motion for Partial
                           Summary Judgment)


Kurz Enterprises et al.,
      Defendants


Pending before the court is defendant Pine Grove Manufactured Homes' motion for partial summary judgment or, in the alternative, for the exclusion of expert testimony. Defendant Kurz Enterprises has joined in Pine Grove's motion. The court has reviewed the parties' submissions on the motion and a collateral motion to supplement the record on summary judgment.

Plaintiffs Kevin Hall and Tammy Emerson reside in a manufactured home that was produced by Kurz and then was sold and installed by defendant Pine Grove. Invoking a number of legal theories, Hall and Emerson seek recovery for personal and property damage based on allegations that they and the structure were exposed to mold that developed because of defective wastewater drainage from the kitchen sink and dishwasher, thus allowing that effluent to collect under the structure. In its motion, Pine Grove argues that there is a legally insufficient basis for Emerson to claim that her personal injuries were caused by the mold.[1] Because the claims in the complaint do not fully correlate to the categories of damages claimed by the plaintiffs, Pine Grove's motion implicates several of those counts in a non-specific way. Pine Grove also contends in the alternative that any expert testimony on legal causation should be

---

[1] Hall's claim for personal injury is not based on exposure to mold. His claim is therefore not implicated by this motion.

1

excluded under either M.R.Evid. 702 or 403 and interpretive authority. By letter from counsel, Kurz joins in Pine Grove's motion. For the reasons stated below and subject to a limited exception regarding one aspect of Donald Bickford's expert testimony, the court denies the motion.

### Motion for partial summary judgment

Pine Grove contends that there does not exist a sufficient factual basis on which Emerson may argue that hives and other allergic reactions were caused by the mold that grew and sludge that accumulated under the plaintiffs' home. The contention of a causal connection between actionable conduct and a subsequent condition is a factual issue. *Merriam v. Wanger*, 2000 ME 159, ¶10, 757 A.2d 778, 781. It rests on proof that the actionable conduct

> played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the [actionable conduct]. The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to judgment.

*Id.*, ¶ 8, 757 A.2d at 780-81, *quoting Crowe v. Shaw*, 2000 ME 136, ¶ 10, 755 A.2d 509, 512.[2]

The record on summary judgment, although revealing evidence that may be useful for cross-examination, is sufficient to support a prima facie case that Emerson's medical condition was legally caused by the mold and sludge found under the house.[3] That record establishes that mold developed and sludge accumulated under the house, particularly

---

[2] In *Merriam*, the Law Court addressed the sufficiency of causation evidence in the context of the trial court's denial of a motion for judgment as a matter of law. In *Crowe*, the issue came up as part of a motion for summary judgment. Although the procedural setting of the case at bar is the same as that involving *Crowe*, the legal standard controlling the sufficiency of the evidence in both contexts is identical. *Rodrigue v. Rodrigue*, 1997 ME 99, ¶8, 694 A.2d 924, 926.

[3] To support its motion for summary judgment, Pine Grove submitted copies of the deposition of Dr. Tan, a medical doctor and allergist who treated Emerson, and of Donald Bickford, an air quality analyst. Those copies, however, are incomplete: some pages (including some that include Pine Grove's record references) are missing. The plaintiffs filed a separate copy of those depositions, and so the court has had access to that entire component of the record, which is important to the issues raised in Pine Grove's motion.

under the kitchen area. In August 2004, Donald Bickford, an air quality examiner, took samples of the material and found that the molds and bacteria he recovered are capable of causing allergic reactions in people. The house was installed in 2002, and the drainage problem did not become apparent until spring 2003, when the weather became warm. It was later discovered that the drain from the kitchen sink and dishwasher was not properly tied into the household plumbing system, allowing wastewater from the kitchen to accumulate under the house. In April 2003, Hall removed some panels that enclosed the area under the house. After the area was ventilated in that way, Emerson, who was working outside near that part of the house, became nauseous, and within the next several days she developed hives. Emerson never had hives previously. In varying levels of intensity, the problem persisted into the summer, prompting her to seek treatment at her local family medical practice. Emerson met with Dr. Yeow Tan, an allergist, in July 2003. Among other diagnostic work, Dr. Tan administered a patch test, using material that had been taken from under the house. That generated a positive test result, manifested by a "dramatic" hive reaction in the area where Dr. Tan placed the patch. PSAMF ¶ 99. Based on her assessment of Emerson, Dr. Tan concluded that there was a "definite relationship" between Emerson's condition and the material taken from underneath the house.

The record includes evidence that mitigates the strength of this opinion. For example, Dr. Tan testified that a chemical analysis of the material removed from the area under the house would be "important" to allow her opinion "to hold water." Such testing was not conducted. Despite this, Dr. Tan maintained her opinion of medical causation based on the results of the patch test. Further, another test to determine sources of allergies (the RAST test) was used to assess whether Emerson is allergic to molds, including "some of the molds that were found in" the plaintiffs' home. DSMF ¶ 43. The court concludes that this, and other similar evidence, may affect the weight of Dr. Tan's testimony on causation. However, the patch test constitutes affirmative information that Dr. Tan used to support her opinion that Emerson's condition was caused by the material that was found under the residence. Nothing in the record necessarily undermines the admissibility of that opinion as a matter of law. In other words, as a matter of law, the

3

record is sufficient to satisfy the plaintiffs' burden of production on the issue of causation.

## Motion to exclude expert testimony under M.R.Evid. 702 and 403

Pine Grove has also moved to exclude the testimony of Dr. Tan and Mr. Bickmore, arguing that their opinions do not satisfy the requirements of expert-based testimony. In short, Pine Grove contends that they are not competent to render opinions and that their opinion testimony is not reliable. Pine Grove presents its evidentiary argument based on the same record that underlies the summary judgment motion. As legal support for its argument, Pine Grove relies in part on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The analysis in *Daubert* must be examined in light of controlling law in Maine, which is best embodied in *State v. Williams*, 388 A.2d 500 (Me. 1978), construing M.R.Evid. 702. In *Williams*, the Law Court held that the ultimate test for the admissibility of expert testimony is whether that testimony "is relevant and will assist the trier of fact to understand the evidence or to determine a fact in evidence." 388 A.2d at 504. (This examination assumes that the proffered witness is qualified to render an opinion.) Properly grounded and legitimately defensible expert opinions may be submitted for consideration by the trier of fact if that evidence will be of assistance to that judge or jury, even if the underlying theory or principle is novel. *Id.* To be relevant, that evidence must be "sufficiently reliable." *Id.* One of the significant consequences of *Williams* is that it vests considerable flexibility and discretion with the court when it must rule on the admissibility of scientific evidence. The *Williams* Court discounted the rather rigid Frye test of general acceptance within the scientific community.

When *Williams* is viewed in this way, this court sees very little – if any – daylight between the analyses in *Williams* and *Daubert*. *Daubert* made clear, as the *Williams* Court did previously, that admissibility of scientific testimony is not governed by its general acceptance in the scientific community. 509 U.S. at 589. Rather, scientific evidence is admissible if it is relevant and reliable. *Id.* Both of these considerations flow from the more general principle that such evidence must have the capacity to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 591; *see* Fed.R.Evid. 702. Again, this tracks the *Williams* analysis. The Supreme Court then went

4

on to identify several factors that the trial court should consider in determining the admissibility of scientific evidence. These factors, which are not exhaustive, flow directly from the notion of reliability. 509 U.S. at 593. Although *Williams* did not go so far as to set out the sub-inquiries found in *Daubert*, the principle and the purpose of the *Williams* inquiry are the same.

Here, Pine Grove has elected to challenge the admissibility of the plaintiffs' expert testimony on the basis of a limited record. That record demonstrates that Dr. Tan is an allergist who is licensed to practice medicine in Maine. When viewed in light of the limited record relating to her qualifications, her license and the existence of her opinion that falls within the scope of her expertise is a sufficient foundation of competence and qualifications to render such an opinion. The record also demonstrates that she evaluated and treated Emerson and, as part of that process, administered a patch test to Emerson in order to expose her to material that was in fact removed from underneath the plaintiffs' house. That test revealed a "dramatic" reaction, which caused Dr. Tan to conclude that there was a definite connection between the material and Emerson's allergic condition. Further, the evidence establishes that a patch test is "an accepted and usual methodology for identifying substances responsible for allergic reactions." PSAMF ¶ 98. Taken as a whole, notwithstanding evidence that may affect the weight that a factfinder may choose to assign to the expert opinion, the evidence provides a proper basis for admission under rule 702. Its potentially high probative value is not substantially outweighed by any considerations that might allow its exclusion under rule 403. Thus, the court concludes that Dr. Tan's testimony will be admissible at trial.

Pine Grove also seeks to exclude expert testimony that the plaintiffs might offer through Bickford. It not entirely clear what opinion testimony Pine Grove moves to exclude. From its statement of material fact, however, the court gathers that it seeks to exclude Bickford's prospective testimony, first, that the drainage problem under the kitchen caused the mold and sludge and, second, that this condition caused Emerson's reaction. *See* SMF ¶¶ 41-42.

First, the record does not properly establish evidence of the former opinion. The plaintiffs correctly note that the record references that Pine Grove invokes to support paragraph 41 are to Bickford's deposition testimony about the source of water that was

5

found under the home. Those deposition passages do not set out a discussion about the cause of the mold and bacteria. Pine Grove has therefore not set out a proper record to challenge this aspect of Bickford's prospective testimony.

Second, the record also does not establish that Bickford has ever formed an opinion about whether Emerson's condition was caused by material from under the home. The record references in support of paragraph 42 demonstrate that Bickford declined to address that issue and instead left it to others. In their response to paragraph 42 of Pine Grove's statement of material fact, the plaintiffs do not suggest that they intend to elicit any such opinion from Bickford. Thus, application of rules 403 and 702 is not necessary because, to the extent revealed by the record, no such opinion exists.

The entry shall be:

Pine Grove's motion for partial summary judgment is denied. Its motion to exclude the expert testimony of Yeow Tan, M.D., is denied. Its motion to exclude the expert testimony of Peter Bickford regarding the source of mold and bacteria is denied. Its motion to exclude Bickford's testimony that such material caused Emerson's medical condition is denied as moot.

The plaintiffs' motion to supplement the record is denied because it would have no bearing on the disposition of the underlying motions.

Dated: May 2, 2006

Justice, Maine Superior Court

KEVIN HALL ET AL VS KURZ ENTERPRISES ET AL
UTN:AOCSsr  -2004-0020258                    CASE #:BANSC-CV-2004-00044
------------------------------------------------------------------------

KURZ ENTERPRISES                                         DEF
ATTY RELLA, CARL  Tel# (207) 945-4722
ATTY ADDR:ONE CUMBERLAND PLACE, STE 314  PO BOX 2700 BANGOR ME 04402-2700

PINE GROVE MANUFACTURED HOMES INC                        DEF
ATTY WILLING, BRIAN D.   Tel# (207) 772-1941
ATTY ADDR:245 COMMERCIAL ST. PO BOX 9781 PORTLAND ME 04104-5081

Kevin Hall  Plt
Tommy Emerson  Plt
Tyler Kolle  Esq.        Lewiston
William Robitzek  Esq,   "

M=More, Space = Exit:M

Select the EXIT KEY for page selection line.