STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-45

RECD AUBSC 01/08/13
AND ~ 1/8/2013

NANCY E. CLEARWATER,
    Plaintiff

v.

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

BONNIE'S BEST, LTD and
BONNIE ERSKINE,
    Defendants


Before the Court is Defendants' motion for summary judgment with respect to Plaintiff's

negligence complaint against them. Oral argument took place on December 4, 2012.

BACKGROUND

This matter arises out of a slip and fall accident that occurred at Saint Andrews Village, a

retirement community in Boothbay Harbor, Maine, on June 27, 2006. (Supp. S.M.F. ¶ 1.) Plaintiff

Nancy Clearwater was working her shift as a certified nurse assistant at the facility at the time of the

fall. (Supp. S.M.F. ¶ 2.) Plaintiff was working the 3 p.m. to 3 a.m. shift. (Supp. S.M.F. ¶ 3.) The

fall occurred at approximately 8:30 p.m. in room #128B, which was occupied at that time by Ruth

Malcolm. (Supp. S.M.F ¶¶ 1, 4.)

At the time of the accident, Defendant Bonnie Erskine operated a full service salon at a

different venue. (Supp. S.M.F. ¶ 5.) Bonnie also rented a space at Saint Andrews Village in the

assisted living area in order to serve residents there. (Supp. S.M.F. ¶ 6.) During the time in

question, Bonnie would sometimes perform services for certain residents in their rooms rather than

1

in her designated area.[1]  (Supp. S.M.F. ¶¶ 7-8; A.S.M.F. ¶ 41.)  On June 27, Bonnie provided hair services to Ruth in her room at around 12 pm.  (Supp. S.M.F. ¶ 10.)

It is disputed whether Bonnie actually cut Ruth's hair, or, instead, only styled it.  Bonnie claims that she did not cut Ruth's hair on June 27, while Plaintiff maintains Bonnie did cut Ruth's hair on the day in question.  (Supp. S.M.F. ¶ 10; Opp. S.M.F ¶ 10.)  Nobody has any independent recollection of what services Bonnie provided that day.  Bonnie points to her business records, which indicate that Ruth was scheduled for "S+S" that day, which means shampoo and style, not cut.  (Supp. S.M.F. ¶ 10.)  Bonnie agrees that leaving hair on the floor "poses a safety risk because it can be slippery and someone could fall on it, causing serious injuries."  (Reply A.S.M.F. ¶ 43.)  After cutting and styling services were performed, Bonnie would bring a broom and dustpan to the residents' rooms to clean up.  (A.S.M.F. ¶ 47.)

Right before the fall, Plaintiff was getting Ruth ready for bed.  (Supp. S.M.F. ¶ 18.)  Plaintiff would sometimes brush Ruth's hair before bed, but did not do so on June 27.  (A.S.M.F. ¶ 53.)  As part of the bedtime routine, Plaintiff would provide Ruth with a large pink basin with water, and a smaller pink basin with water, for washing and mouth care.  (Supp. S.M.F. ¶ 20.)  Plaintiff was gathering up the bedtime items to put them away before she fell.  (Supp. S.M.F. ¶ 21.)  When she went to round the corner at the foot of Ruth's bed, she slipped and her left leg started to go under the bed and she felt herself going backwards.  (Supp. S.M.F. ¶ 23.)  Plaintiff grabbed the footboard with her hand, dropped the items, and threw herself across the bottom of Ruth's bed.  (Supp. S.M.F. ¶ 24.)  Plaintiff claims that she hyperextended her left leg during the fall.  (Supp. S.M.F. ¶ 25.)

---

[1] The parties disagree over whether Bonnie was permitted to work in residents' rooms.  Bonnie maintains that the head nurse, Millie Farnham, asked her to perform services in certain residents' rooms who were particularly infirm or bed-ridden, while Plaintiff claims that she was not permitted to do so.  (Supp. S.M.F. ¶¶ 7-8; A.S.M.F. ¶¶ 61, 70-73.)  Plaintiff argues that this is relevant because if Bonnie disobeyed rules of the facility, that would be evidence of negligence as well.  (Pl.'s Br. 10.)  Either way, the parties do agree that Bonnie would sometimes perform services in residents' rooms.

Plaintiff has testified in deposition that she felt at first the "sensation" of slipping on ice or water. (Supp. S.M.F. ¶ 26; Opp. S.M.F. ¶ 26.) Plaintiff does not remember where she was looking or whether she was looking down immediately before the fall, and she does not recall noticing anything on the floor. (Supp. S.M.F. ¶¶ 27-29.) She had not slipped on anything the previous times she had walked by Ruth's bed that day. (Supp. S.M.F. ¶ 31.) After she fell, Plaintiff looked down and noticed a clump of hair on the floor at the edge of the bed. (Supp. S.M.F. ¶ 30.) Plaintiff maintains that she slipped on the clump of hair, which caused her to fall. (A.S.M.F. ¶ 56.) Bonnie denies this, pointing out that Plaintiff felt like she was sliding on ice or water, and only saw the hair after she fell. (Reply A.S.M.F. ¶ 56.)

Plaintiff did not compare the hair on the floor directly to Ruth's hair, but she did compare it to Ruth's hair based on her personal observation. (Supp. S.M.F. ¶ 34; Opp. S.M.F. ¶ 34.) The hair that Plaintiff found on the floor was "soft, wavy gray/white hair." (A.S.M.F. ¶ 55.) Plaintiff gave the clump of hair to the head nurse, Janet Hatch, who wrote an incident report and then threw the hair away. (Supp. S.M.F. 35; Opp. S.M.F. ¶ 35.)

Plaintiff alleges in her complaint that Bonnie was negligent in that she created an unreasonably dangerous hazard in Ruth's room by failing to clean up the hair that she knew or should have known posed a foreseeable risk to others, and by failing to warn employees that there was hair on the floor. (Supp. S.M.F. ¶ 14.) Plaintiff alleges that as a direct and proximate result of Bonnie's negligence, she fell and sustained injuries. (Supp. S.M.F. ¶ 15.) Plaintiff also alleges a count against Bonnie's Best, LTD, for negligence and vicarious liability in connection with Bonnie's acts performed in the scope of her employment. (Supp. S.M.F. ¶ 16.)

STANDARD OF REVIEW

Summary judgment is appropriate when review of the parties' statements of material facts and the record evidence, considered in the light most favorable to the non-moving party,

demonstrate that there is no dispute over any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733. To withstand a defendant's motion for summary judgment in a negligence case, the plaintiff must demonstrate "a prima facie case for each of the four elements of negligence: duty, breach, causation, and damages." *Davis v. R C & Sons Paving, Inc.*, 2011 ME 88, ¶ 10, 26 A.3d 787.

In addition to direct evidence and specific facts, the court will consider "any reasonable inferences that a fact-finder could draw from the given facts." *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18. However, the evidence must be more than speculative or conjectural to survive summary judgment. *Id. See also Holland v. Sebunya*, 2000 ME 160, ¶ 16, 759 A.2d 205. "If an inference is rational and flows logically from the evidence, it may be considered by the fact-finder." *Addy v. Jenkins*, 2009 ME 46, ¶ 20, 969 A.2d 935 (Silver, J., dissenting) (citing *Estate of Hersum v. Kennebec Water Dist.*, 151 Me. 256, 263, 117 A.2d 334, 338 (1955). However, if a countervailing inference is equally (or more) probable, then the evidence is speculative and may not be considered. *Id.* (citing *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 778; *Estate of Hersum*, 151 Me. at 263, 117 A.2d at 338). In other words, an inference is reasonable and may be considered as long as other inferences are not equally probable. *See id.* ("The fact-finder may not select from among equally probable inferences.").

DISCUSSION

In this case, the parties agree that Bonnie had a duty to prevent her clients' hair from remaining on the floor. The elements in dispute are (1) whether Plaintiff has presented prima facie evidence of a **breach**, which is only possible if Bonnie did, in fact, cut Ruth's hair or otherwise cause it to be left on the floor, and (2) whether she has presented prima facie evidence of **causation** – that is, assuming Bonnie did leave the hair there, did it proximately cause Plaintiff's fall?

4

## I. *Breach*

The parties agree that a non-possessor of property has a duty to those on the relevant premises to not cause an "unreasonably dangerous condition." *Quirion v. Geroux*, 2008 ME 41, ¶¶ 10-11, 942 A.2d 670. Bonnie concedes that leaving hair on the floor would create an unreasonably dangerous condition. (A.S.M.F. ¶ 43) (Leaving hair on the floor "poses a safety risk because it can be slippery and someone could fall on it, causing serious injuries."). The basis of Bonnie's motion is that no breach occurred: "There is no evidence, let alone prima facie evidence, that Bonnie cut hair or left hair on the floor of Ruth Malcolm's room." (Def. Br. 6-7.)

It is undisputed that Bonnie provided some type of hair services in Ruth's room on the day in question, but nobody has any independent recollection of exactly what services were provided. Bonnie's business records indicate that Ruth was scheduled for "S+S," meaning shampoo and style, but not a cut. However, the record indicates that Bonnie's recordkeeping may be somewhat relaxed, as certain individuals who did receive cuts were charged similar prices. (A.S.M.F. ¶¶ 84-85.) In any case, because Bonnie was in the same room earlier in the day, and because she was known to be dealing with hair in some capacity, the jury could reasonably infer that Bonnie cut Ruth's hair or otherwise caused a sizeable chunk of it to be on the floor. Although the business records indicate that no cut took place, it is the province of the jury to evaluate the credibility of those records and their creator. Although the connection is tenuous given the lapse in time and the lack of any direct evidence, the Court cannot say that any other single inference is equally or more probable[2] than the inference that Bonnie caused the hair to be there.

## II. *Causation*

---

[2] Defendant lists a number of other inferences that could be drawn, including the possibility that the hair was tracked in on someone's shoe, or fell off a broom or other cleaning device, or fell off of Ruth's head naturally. (Def.'s Br. 7.) Although these are all possible, the Court finds that they are not equally probable to the inference that Bonnie caused the hair to be there.

As to the element of causation, negligence is actionable when it "played a substantial part in bringing about or actually causing the injury or damage and . . . the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence." *Merriam*, 2000 ME 159, ¶ 8, 757 A.2d 778. "A defendant is entitled to a summary judgment if there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff." *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757. In *Houde*, the Law Court affirmed summary judgment for the defendant when "[t]he only evidence . . . to support the inference that [plaintiff] slipped on soot was a dark smudge that looked like soot that she found on the knee of her pajamas several days after her fall." *Id.* ¶ 12. The court also noted that no one saw soot on the floor on the morning of, or immediately following, the accident. *Id.* The plaintiff in that case had also testified that, before her fall, she had cleaned the floor of all soot. *Id.*

Unlike in *Houde*, where the connection was made several days later, the evidence here indicates that the Plaintiff saw the clump of hair on the floor near the edge of the bed after she fell. Because Plaintiff observed the hair right after her fall and both parties agree that hair left on the floor can be slippery and dangerous, a jury could reasonably infer that the hair caused Plaintiff to fall. Again, there is no countervailing inference that is equally or more probable.

The entry is:
    The Court DENIES the Defendants' motion for summary judgment.

_Jan. 8, 2013_
DATE

SUPERIOR COURT JUSTICE

6

NANCY E CLEARWATER - PLAINTIFF

Attorney for: NANCY E CLEARWATER
MICHAEL T BIGOS  - RETAINED
BERMAN & SIMMONS PA
129 LISBON STREET
PO BOX 961
LEWISTON ME 04243-0961


vs
BONNNIES BEST LTD - DEFENDANT

Attorney for: BONNNIES BEST LTD
JOHN R VEILLEUX  - RETAINED 04/04/2012
NORMAN HANSON & DETROY LLC
415 CONGRESS STREET
PO BOX 4600
PORTLAND ME 04112-4600


BONNIE ERSKINE  - DEFENDANT

Attorney for: BONNIE ERSKINE
JOHN R VEILLEUX  - RETAINED 04/04/2012
NORMAN HANSON & DETROY LLC
415 CONGRESS STREET
PO BOX 4600
PORTLAND ME 04112-4600

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No  AUBSC-CV-2012-00045


DOCKET RECORD

Filing Document: COMPLAINT                    Minor Case Type: PROPERTY NEGLIGENCE
Filing Date: 03/30/2012

## Docket Events:

03/30/2012 FILING DOCUMENT - COMPLAINT FILED ON 03/30/2012

03/30/2012 Party(s):  NANCY E CLEARWATER
          ATTORNEY - RETAINED ENTERED ON 03/30/2012
          Plaintiff's Attorney: MICHAEL T BIGOS


03/30/2012 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 03/30/2012

03/30/2012 Party(s):  BONNIE ERSKINE
          SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 03/24/2012
          BONNIE ERSKINE

03/30/2012 Party(s):  BONNIE ERSKINE
          SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 03/30/2012

04/05/2012 Party(s):  BONNNIES BEST LTD,BONNIE ERSKINE
          RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 04/04/2012

04/05/2012 Party(s):  BONNNIES BEST LTD
          ATTORNEY - RETAINED ENTERED ON 04/04/2012
          Defendant's Attorney: JOHN R VEILLEUX