STATE OF MAINE
SAGADAHOC, ss

Superior Court
CIVIL ACTION
Docket No. CV-14-25

MICHAEL AND CHRISTINE
RINEHART,

              Plaintiffs

    v.

STATE FARM MUTUAL
AUTOMOBILE
INSURANCE COMPANY,

              Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)

## DECISION AND JUDGMENT

The Motion for Summary Judgment of Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), along with the opposition of Plaintiffs Michael and Christine Rinehart ["the Rineharts"] and State Farm's reply came before the court for oral argument July 7, 2015. After oral argument, State Farm was granted leave to submit a further memorandum, in response to which the Rineharts have also filed a further memorandum.

This case arises from an accident in which Michael Rinehart suffered bodily injury while operating a motor vehicle insured by State Farm. The accident occurred when an underinsured motorist's vehicle struck Mr. Rinehart's vehicle from behind. The parties agree that the State Farm policy covering the vehicle Mr. Rinehart was driving affords $100,000 in uninsured motorist (UM) coverage for Mr. Rinehart's injuries, and also agree that State Farm is entitled to an offset against that amount based on the Rineharts having received $100,000 in settlement of their claims against the underinsured motorist, representing the limit of that motorist's policy. However, the Rineharts assert that they are also entitled to additional amounts from

State Farm. The Rineharts' three-count Complaint against State Farm asserts the following claims:

- Count I contends that, under the principle known as "stacking," the Rineharts are entitled to the benefit of the UM coverage provided by three other automobile insurance policies the Rineharts have with State Farm, covering other vehicles owned by the Rineharts.

- Count II contends that the Rineharts are entitled to coverage because the accident was caused in whole or part by a "phantom vehicle."

- Count III asserts a loss of consortium claim on behalf of Christine Rinehart.[1]

State Farm's Motion for Summary Judgment seeks judgment on all claims. Based on the entire record, the court agrees that State Farm is entitled to judgment and grants the Motion.

## Factual and Procedural Background

Where indicated, the following facts are gathered from the Stipulation of Facts and the exhibits thereto filed by the parties March 13, 2015, as well as State Farm's Statement of Material Facts (S.M.F.), the Rineharts' Opposing Statement of Material Facts (O.S.M.F.), the Rineharts' Additional Statement of Material Facts (A.S.M.F.), and State Farm's Reply Statement (R.S.M.F.). Apart from certain allegations involving the alleged "phantom vehicle," no material facts appear to be in dispute.

On June 1, 2011, Michael Rinehart was driving his 2001 Saab Station wagon on Bypass Drive in Topsham, Maine. While stopped in a line of traffic, his car was rear-ended by a vehicle driven by Erin Parker. He and Christine Rinehart are husband and wife.

---

[1] Although State Farm seems judgment on the Complaint, its memoranda do not refer to the

2

At of June 1, 2011, the Rineharts had four different automobile insurance policies with State Farm, each of them providing primary coverage for a single vehicle listed on the policy declarations page. Three of the policies used the same policy form, and the fourth—the one issued for the vehicle involved in the accident—used a different policy form. Each of the four policies provided UM coverage for bodily injury of $100,000 per person.

The policies are as follows:

1. Policy Number 42 2569-F13-19B for a 2001 Saab station wagon, utilizing Policy Form 9819A. The declarations page for this policy lists the Saab station wagon that Mr Rinehart was driving when the accident occurred.

2. Policy Number 050 8214-A11-19C, utilizing Policy Form 9819B. The declarations page for this policy identifies a 1988 Saab Model 900 as "Your Car" for purposes of coverage

3. Policy Number 054 6869-B12-19D, also utilizing Policy Form 9819B. The declarations page for this policy identifies a 1992 Saab Model 900 as "Your Car" for purposes of coverage.

4. Policy Number L06 1268-C18-19L utilizing Policy Form 9819B. The declarations page identifies a 2001 Saab Model 9-3 as "Your Car" for purposes of coverage.

Ms. Parker's automobile insurance carrier settled the Rineharts' claims against Ms. Parker for the $100,000 limit of her policy. With State Farm's consent, the Rineharts signed a release of all claims against Ms. Parker.

The Rineharts' "phantom vehicle" claim relies on an affidavit from a man named David Closson who was driving a vehicle in the line of traffic ahead of the Rinehart and Parker vehicles when the accident happened. His affidavit states that traffic at the intersection of Bypass Road and Rte. 196 had stopped suddenly and unexpectedly. Mr. Closson braked hard

3

and was able to stop his vehicle, but some of the vehicles behind his collided. Mr. Closson subsequently approached a vehicle ahead of his that had stopped at the intersection and spoke to the unidentified driver, who informed Closson that her vehicle had stopped because it was out of gas. The Rineharts' "phantom vehicle" claim asserts that this unidentified driver was also at fault for the accident.

### Standard of Review

"Summary judgment is appropriate when the record reveals no issues of material fact in dispute. A fact is material if it has the potential to affect the outcome of the case." *Lepage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 9, 909 A.2d 629 (citations omitted).

The Law Court has held that "[s]ummary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law." *Curtis v. Porter*, 2001 ME 158, ¶7, 784 A.2d 18; *see also Houde v. Millett*, 2001 ME 183, ¶11, 787 A.2d 757.

If "a defendant moves for summary judgment, the plaintiff 'must establish a *prima facie* case for each element of her cause of action' that is properly challenged in the defendant's motion." *Curtis*, 2001 ME 158, ¶8, 784 A.2d 18 (quoting *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶9, 711 A.2d 842); *see also Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶9, 742 A.2d 933. When considering a Motion for Summary Judgment, the court must admit uncontroverted facts from the statement of material facts that are properly supported. M.R. Civ. P. 56(h)(4 ).

4

<u>Discussion</u>

*A. The Legal Framework*

In Maine, insurers are required to provide uninsured/underinsured motorist coverage pursuant to 24-A M.R.S. § 2902.[2] The Law Court has explained that "The purpose of the statute is to permit an injured party to receive the same recovery as would have been available to him or her had the tortfeasor carried an equivalent level of insurance." *Molleur v. Dairyland Ins. Co.*, 2008 ME 46, ¶ 10, 942 A.2d 1197. "This purpose is effected by interpreting the statute liberally in favor of insured individuals and by strictly interpreting it against insurers. Any ambiguity in 'legally entitled to recover,' the operative language in section 2902, is to be resolved in favor of injured insureds. " *Id.* (citations omitted).

In deciding whether UM coverage applies the court looks to "whether the tortfeasor was underinsured based on a comparison of [the tortfeasor's] coverage with the [plaintiff's] available underinsured vehicle coverage…;" and whether the plaintiff is legally entitled to recover from the tortfeasor. *See Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶¶ 8-9, 942 A.2d 663.

The Law Court has described UM coverage as "gap coverage", and has stated that, in determining whether there is a gap and how wide it is

> the court initially asks what amount the injured party would recover if the tortfeasor were insured to the amount of the injured party's UM coverage. If damages are less than the total policy limits, as here, the injured party would recover his damages in full.

---

[2] The statute provides, in part:

A policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may not be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided in the policy or supplemental to the policy for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, sustained by an insured person resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle.

24-A M.R.S. § 2902(1).

5

If damages exceed the total limits, he would recover that total limit. After determining this recovery amount, the court then subtracts the amounts already paid by the tortfeasor or by insurers in settlement, and thereby determines the coverage gap.

*Tibbetts v. Dairyland Ins. Co.*, 2010 ME 61, ¶¶ 17-18, 999 A.2d 930.

Interpretation of the language of an insurance contract is a question of law. *See Jack v. Tracy*, 1999 ME 13, ¶8, 722 A.2d 869. "'The language of a contract of insurance is ambiguous if it is reasonably susceptible of different interpretations.'" *Apgar v. Commercial Union Ins. Co.*, 683 A.2d 497, 498 (Me. 1996)(quoting *Brackett v. Middlesex Ins. Co.*, 486 A.2d 1188, 1189 (Me. 1985)). When "determining whether an insurance contract is ambiguous, the long-standing rule in Maine requires an evaluation of the instrument as a whole." *Maine Drilling & Blasting v. Insurance Co. of N. Am.*, 665 A.2d 671, 675 (Me. 1995).

"'Exclusions and exceptions in insurance policies are disfavored and are construed strictly against the insurer.'" *Pease v. State Farm Mut. Auto. Ins. Co.*, 2007 ME 134, ¶ 7, 931 A.2d 1072 (quoting *Foremost Ins. Co. v. Levesque*, 2005 ME 34, ¶7, 868 A.2d 244.) "[E]ven if the exclusionary language in [an insurer's] policy is explicit and unambiguous, it cannot prevail if it is contrary to the UM statute or public policy." *Pease*, 2007 ME 134, ¶ 13, 931 A.2d 1072 (Silver, Concurring). In *Moody v. Horace Mann Ins. Co.*, the Law Court upheld a "clear and unambiguous" anti-stacking provision that did not void required underinsured motorist coverage. 634 A.2d 1309, 1311 (Me. 1993).

B. *Set-Off for Plaintiffs' Recovery from the Tortfeasor*

A threshold point that merits explanation is that State Farm is entitled to offset the $100,000 that the Rineharts recovered from Ms. Parker against the $100,000 in UM coverage for bodily injury that State Farm acknowledges is available to the Rineharts.

The Nonduplication section of Policy Form 9819B provides:

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

6

1. that have already been paid to or for the *insured*;

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under liability coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

   a. have already been paid;

(Def.'s Ex. 6, 17.) Policy Form 9819 A provides under Limits of Liability:

1. The amount of coverage is shown on the declarations page under "Limits of Liability – U – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury*, and all emotional distress resulting from this bodily injury sustained by other persons who do not sustain *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

2. Any amount payable under this coverage shall be reduced:
   a. by any amount paid or payable to or for the *insured*;
      (1) for *bodily injury* under the liability coverage;

(Def.'s Ex. 5, 15.) The Rineharts do not dispute that State Farm is due a $100,000 set-off against UM coverage available under the primary policy, based on the amount of the settlement with Ms. Parker, but contend they are entitled to an additional $300,000 in UM coverage under their three other policies with State Farm.

*C. The Rineharts' Stacking Claim*

State Farm agrees that the Rineharts were insured by all four of the State Farm policies at the time of the accident, but State Farm contends that only one of the four policies actually provides uninsured motorist coverage for this accident. The Rineharts seek to apply multiple, or all four, of the State Farm policies to the accident.

7

The Rineharts contend that there are three possible conclusions that this court could reach regarding the applicable underinsured motorist coverage (apart from the issue of the phantom vehicle):

- All four insurance policies apply and should be stacked, amounting to insurance coverage of $400,000, which after the $100,000 liability offset would leave $300,000 in UIM coverage available for the Rineharts.

- The Form 9819B policies are not stackable, but the Form 9819A policy is stackable. One form 9819B policy can thereby be stacked with the Form 9819A policy, resulting in total coverage of $200,000, which after the $100,000 liability set-off would leave $100,000 in UIM coverage available.

- None of the policies can be stacked. After the $100,000 liability set-off there would be no available coverage.

Both policy types that the Rineharts had with State Farm (Form 9819A and Form 9819B) have language concerning the availability of other uninsured motorist coverage. The policy covering the 2001 Saab station wagon involved in the accident is the only one of the four policies utilizing Policy Form 9819A, and it provides:

**If there is other coverage**
1. If uninsured motor vehicle coverage for *bodily injury* is available to an *insured* from more than one policy provided by us or any other insurer, any coverage applicable under this policy shall apply:

   a. on a primary basis if the *insured* sustains *bodily injury* while *occupying your car*, or while not *occupying* a motor vehicle or trailer.

   b. on an excess basis if the *insured* sustains *bodily injury* while *occupying* a vehicle not owned by or leased to *you, your spouse,* or any *relative.*

2. Subject to item 1 above, if this policy and one or more other policies provide coverage for *bodily injury*:

   a. on a primary basis, we are liable only for our share. Our share is that percent of the damages payable on a primary basis that the limit of liability of this

8

policy bears to the total of all applicable uninsured motor vehicle coverage provided on a primary basis.

b. on an excess basis, we are liable only for our share. Our share is that percent of the damages payable on an excess basis that the limit of liability of this policy bears to the total of all applicable uninsured motor vehicle coverage provided on an excess basis.

(Def.'s Ex. 5, 16.)(emphasis in the original).

Policy Form 9819B, which was utilized in the other three policies, provides:

**If Other Uninsured Motor Vehicle Coverage Applies**
1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

(Def.'s Ex. 6, 18.)(emphasis in the original.)

Policy Form 9819B also provides regarding uninsured motor vehicle coverage limits: "These uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of: 1. *insureds*; 2. claims made; 3. vehicles insured; or 4. vehicles involved in the accident." (Def.'s Ex. 6, 17.)

State Farm contends, and this court agrees, that Policy Form 9819B precludes stacking. However, the court also agrees with the Rineharts that Policy Form 9819A—the form used for the policy that covers the vehicle involved in the accident—does not preclude stacking.[3] The question thus becomes how to resolve the conflicting language between the two policy forms.

---

[3] State Farm makes a fallback argument that Form 9819A also has anti-stacking language based on the following:

**When Coverage U Does Not Apply**
THERE IS NO COVERAGE:
2. FOR *BODILY INJURY* TO AN *INSURED*.

9

On two independent grounds, the court concludes that the provisions of the three Form 9819B policies that provide primary coverage for the Rineharts' three other vehicles do not permit those policies to be stacked upon the Form 9819A policy that does provide primary coverage for the vehicle involved in the accident.

One basis for this conclusion is that, for any two policies to be stacked, neither can contain an express valid prohibition against stacking. Although the Form 9819A policy that affords primary coverage does not preclude stacking, each of the three Form 9819B policies that the Rineharts propose to stack expressly says that it cannot be stacked with any other policy. The Rineharts do not argue, nor could they reasonably argue, that the Form 9819B prohibition on stacking is invalid or unenforceable.

The Rineharts do argue that the fact that Policy Form 9819A does not preclude stacking means that they should be allowed to stack at least one of the three Form 9819B policies, if not all three. The premise for that argument is that the permissive language of Policy Form 9819A trumps the preclusive language of Form 9819B. However, neither policy is ambiguous, nor does the comparison of the two create any ambiguity. Only by ignoring entirely the preclusive language of Form 9891B can any of those policies be stacked on the primary Form 9819A policy.

---

a. WHILE *OCCUPYING* A MOTOR VEHICLE OWNED BY YOU OR LEASED BY OR LEASED TO *YOU, YOUR SPOUSE* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY;
(emphasis in the original.)

The court does not view this language as relevant. Instead, it is an other-owned vehicle exclusion that would only apply if Mr. Rinehart had been driving one of his other vehicles that was not insured under Form 9819A. State Farm raising this hypothetical has no impact, since Mr. Rinehart was driving a vehicle covered under Form 9819A. This language is similar to that found in *Cash v. Green Mountain Ins. Co.*, in which the Law Court stated: "Uninsured motorist coverage on one of a number of vehicles owned by an insured does not extend the benefits of such coverage, for no premium, to all other vehicles owned by that insured." *Cash*, 644 A.2d 456, 457 (Me. 1994) (quoting *Hare v. Lumbermens Mut. Casualty Co.*, 471 A.2d 1041, 1043 (Me. 1984)).

The other basis for the same conclusion lies in the Exclusions within the Uninsured Motor Vehicle Coverage section of each of the Form 9819B policies. The Exclusions from UM coverage appear at page 17 of Form 9819B and include the following provision:

THERE IS NO COVERAGE:

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

> a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*

The "Definitions" section at page 6 of all three Form 9819B policies defines "*YOUR CAR*":

> "*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. . . .

Thus, the three policies utilizing Form 9819B exclude UM coverage for bodily injury sustained in an accident involved an owned vehicle other than the vehicle listed on the policy declarations page. Because he owned the vehicle he was driving, and because it is not the listed vehicle in any of the three Form 9819B policies, it follows that none of them provides stackable UM coverage for Mr. Rinehart's injuries.

Because UM coverage is available only under the primary policy in the amount of $100,000, and because the settlement from Ms. Parker was also for $100,000.00, the set-off is for the full amount of UM coverage under the primary policy, meaning also that there was no gap in UM coverage. *See Tibbetts v. Dairyland Ins. Co., supra,* 2010 ME 61 at ¶¶ 17-18, 999 A.2d 930.

*D. Phantom Vehicle Coverage*

State Farm also seeks summary judgment on the Rineharts' phantom vehicle uninsured motorist claim. State Farm argues that the Rineharts have not raised any issue that a phantom vehicle was the proximate or legal cause of the accident.

11

To prevail on a claim for negligence, a plaintiff must demonstrate a duty of care, breach of the duty of care, injury, and causation between the breach of the duty of care and the injury. *See Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 16, 60 A.3d 759.

"Proximate cause is generally a question of fact for the jury, but the court has a duty to direct a verdict for the defendant if the jury's deliberation rests only on speculation or conjecture." *Merriam v. Wanger*, 2000 ME 159, ¶ 10, 757 A.2d 778. The Law Court has held that "[l]iability cannot be predicated upon the mere happening of an accident. It does not necessarily imply negligence . . . . [T]o establish a case upon inferences drawn from facts, it must be from facts proven. Inferences based on mere conjecture or probabilities will not support a verdict." *Duchaine v. Fortin*, 159 Me. 313, 318, 192 A.2d 473, 476 (1963). (citation omitted).[4]

In support of their phantom vehicle claim, the Rineharts have cited to a case in which there was uninsured motorist coverage for an accident triggered by an approaching car that caused the insured's vehicle to have to swerve off the road. *Lanzo v. State Farm Mut. Auto. Ins. Co.*, 524 A.2d 47, 48-49 (Me. 1987). While *Lanzo* did not involve direct contact and the other driver was also unknown, the case is distinguishable, in that the evidence was sufficient to show that the accident was caused by the negligence of the oncoming vehicle. *See id.* at 50.

---

[4] A plaintiff's case cannot be based on speculation or conjecture. *See Houde v. Millett*, 2001 ME 183, ¶¶ 11-12, 787 A.2d 757 (holding that testimony regarding soot being frequently tracked into the kitchen from the basement and soot being on the floor the night before the fall (but subsequently cleaned up by the plaintiff), as well as evidence of a dark smudge later discovered on plaintiff's pajama leg, failed to show without speculation that soot caused the plaintiff to fall). "A defendant is entitled to . . . summary judgment if there is so little evidence tending to show that . . . defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation . . . to return a verdict for the plaintiff." *Houde*, 2001 ME 183, ¶ 11, 787 A.2d 757. When making a determination regarding proximate cause, fact-finders are permitted to make reasonable inferences from their own experiences, but the court has held that "in cases involving complex facts beyond the ken of the average juror, or those potentially involving multiple causes, more substantial evidence of proximate cause may be required." *Tolliver v. Dep't. of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223.

In this incident, the accident was caused by Ms. Parker's failure to stop in a line of stopped cars. The Rineharts have not presented any evidence that the accident was the result of negligence on the part of the phantom driver at the head of the line. First, there apparently were multiple vehicles between the Rinehart vehicle and the vehicle that had stopped, meaning that there is no sufficient causal link between the front vehicle's stopping and Ms. Parker's vehicle's colliding with the Rinehart vehicle. Moreover, the fact that the front vehicle stopped is not in itself evidence of negligence, and even if running out of gas on a public road were evidence of negligence, the unidentified driver's statement to that effect to Mr. Closson is likely hearsay, because it would be admitted for its truth and likely not within any exception. For all these reasons, the Rineharts have not made a *prima facie* showing that anyone other than Ms. Parker was at fault for the accident and thus have not shown that phantom vehicle coverage is potentially applicable.

E. *Christine Rinehart's Consortium Claim*

A review of the four policies does not indicate any UM coverage for loss of consortium. Also, because Michael Rinehart is not entitled to UM coverage beyond that available from the policy that provides primary coverage, and because State Farm is entitled to an offset for the proceeds the Rineharts have recovered from Ms. Parker's insurer, State Farm is entitled to summary judgment on Michael Rinehart's claim and also on the consortium claim of Christine Rinehart, which derives from and depends on the claims of Michael Rinehart.

## Conclusion

For the reasons stated above, the Motion for Summary Judgment of Defendant State Farm Mutual Automobile Insurance Company is hereby granted. The Clerk is directed to enter judgment on the complaint for the Defendant. Defendant is awarded its costs as the prevailing party.

13

The clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: August 19, 2015

A. M. Horton
Justice, Superior Court

14

MICHAEL RINEHART   - PLAINTIFF                                    SUPERIOR COURT
34 IVANHOE DRIVE                                                 SAGADAHOC, ss.
TOPSHAM ME 04086                                                 Docket No   BATSC-CV-2014-00025
Attorney for: MICHAEL RINEHART
CHRISTIAN J LEWIS   - RETAINED
HARDY WOLF & DOWNING                                             **DOCKET RECORD**
186 LISBON ST
PO BOX 3065
LEWISTON ME 04243-3065


CHRISTINE RINEHART   - PLAINTIFF
34 IVANHOE DR
TOPSHAM ME 04086
Attorney for: CHRISTINE RINEHART
CHRISTIAN J LEWIS   - RETAINED
HARDY WOLF & DOWNING
186 LISBON ST
PO BOX 3065
LEWISTON ME 04243-3065


vs
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO - DEFENDANT
C/O DRUMMOND WOODSUM, 84 MARGINAL WAY STE 600
PORTLAND ME 04104
Attorney for: STATE FARM MUTUAL AUTOMOBILE INSURANCE CO
JAMES MAIN   - RETAINED
HOY & MAIN
76 DEPOT ROAD
PO BOX 1569
GRAY ME 04039

Filing Document: COMPLAINT                      Minor Case Type: AUTO NEGLIGENCE
Filing Date: 08/07/2014

**Docket Events:**